Harold Eugene HUFFMAN, an Infant, under the age of 21 years, who sues by Charlie J. Huffman, brother, as Next Friend, Plaintiff in Error,

v.

OKLAHOMA COCA–COLA BOTTLING COMPANY, a corporation, Defendant in Error.

No. 36253.

Supreme Court of Oklahoma.

March 22, 1955.

Robert E. Shelton, and Marie Leatherman, Oklahoma City, for plaintiff in error.

Dudley, Duvall & Dudley by John B. Dudley, Jr., Paul Dudley, Oklahoma City, for defendant in error.

CORN, Justice.

In June, 1952, the plaintiff, a minor 15 years of age, left his home in North Carolina and came to Oklahoma City to visit a relative. Circumstances necessitated his seeking employment, and on June 17th., he made written application therefor to defendant. In this application plaintiff falsified his age, but it is conceded defendant made no investigation of the matter. After being interviewed plaintiff was accepted and immediately put to work loading and unloading defendant's trucks under circumstances, and in the manner hereinafter detailed. Four days after beginning his employment plaintiff was injured when a bottle was broken and a piece of glass struck him in the eye. The following delineation of defendant's operations, and the physical properties involved, will assist in understanding the circumstances out of which this appeal evolved.

Defendant manufactures and bottles soft drinks for distribution and sale to the general public. Bottled drinks are handled in cases, most of which are constructed of heavy gauge, steel wire. In distributing bottled drinks defendant utilizes motor trucks with specially designed beds, which permit loading of cases 4–5 decks high and

5-6 cases wide, placed end to end across the bed. The trucks beds are so designed as to permit the cases to be shoved back and forth across the bed, and thus facilitate loading and unloading from either side. Loading and unloading operations are accomplished by driving the trucks into defendant's stock room, which is separate from the remainder of the plant. Within the stock room there are two conveyor lines, designated as the "East" and "West", which are. used in loading and unloading defendant's trucks, being so constructed and arranged within the building as to permit the trucks to be parked immediately parallel thereto.

These conveyors best may be depicted as horizontally moving, endless belts, along which the cases of bottles move. They are of a power roller type of construction, in which the moving belt travels between two sets of steel rollers. Traveling at approximately 50 feet per minute this belt provides a friction drive which turns the rollers so that cases placed thereon move constantly in the direction the belt moves. The machine is powered by a 1½ h. p. electric motor, completely encased and located underneath the conveyor, which may be operated by either an automatic switch or by a manual type switch. The automatic switch will stop the movement when the belt is overloaded, or the manual switch can be used when cases of bottles stack up. Movement of the top rollers, upon which the cases rest, can be stopped merely by placing a hand thereon. Normal operations entail some breakage, and such debris is put into boxes placed beneath the conveyors for that purpose.

On June 21, 1952, four days after beginning his employment, plaintiff was unloading cases of empty bottles from one of defendant's trucks onto the "East" conveyor line. As he turned to lift another case from the truck an employee on the opposite side of the truck pushed another case toward plaintiff. An empty bottle struck either the truck bed or another case of bottles, shattering the bottle and causing a glass fragment to pierce plaintiff's left eye, resulting in permanent injury thereto,

for which plaintiff sought recovery in damages.

The petition, and amendments thereto, charged defendant with negligence in that the bottles which plaintiff handled in his work were inherently dangerous; employment was improperly supervised and plaintiff was without guard or protection while working in a hazardous position, and without proper means or opportunity to protect himself from acts of the other employee who was assisting in handling the bottles. The petition particularly charged defendant with violation of our statutes, 40 O.S.1951 §§ 71-88, regulating child labor, in that defendant failed to make investigation required by statute to ascertain plaintiff's age, or obtain proper certificate with reference thereto; and in employing plaintiff and permitting him to work in operation of dangerous and hazardous machinery.

The amended answer made general denials of plaintiff's petition. Defendant further plead contributory negligence, unavoidable casualty, and that any injury resulted from act of a fellow servant, for which defendant was not liable; and, that machinery involved was not dangerous, so the trial court was without jurisdiction and plaintiff's exclusive remedy was before the State Industrial Commission.

Plaintiff denied generally the allegations of the amended answer, and realleged defendant's liability by reason of having employed a minor in a hazardous occupation contrary to statute regulating child labor.

The parties waived a jury trial, and these issues were tried to the court. After hearing all the evidence, and viewing the premises and the plant machinery, the trial court entered judgment finding the issues generally in favor of defendant.

The appeal from the trial court's judgment presents for determination the sole issue whether at the time of injury the minor plaintiff was operating, or assisting in operation of, dangerous machinery within the meaning of the statutes. The nature of the question to be considered obviates the need for an extended résumé of the evidence disclosed by the record.

Additionally to evidence relative to construction and operation of the conveyors, and the evidence as to nature and extent of the injury, there was further testimony concerning other injuries which had occurred in this part of the plant. Six employees had received minor cuts from broken glass. Three other employees had sustained bruised fingers while unloading bottles on to the conveyors. One employee received a fractured finger when it was caught between two cases during unloading of a truck. None of the employees were furnished with goggles or masks for use during their work.

Defendant's evidence dealt principally with the construction and operation of the conveyors as noted above. Considerable testimony was elicited from witnesses who were qualified safety engineers, but their conclusions as to whether the conveyors were dangerous machines were excluded from the evidence. There was, however, testimony relative to the safety factors considered in construction of the conveyors, as well as uncontroverted testimony showing such machines were in general use; and that the conveyor could be stopped merely by placing a hand upon one of the rollers; a hand placed between the rollers would neither be pinched out nor drawn into them, the pull of the rollers being insufficient to do this. There was testimony that it was impractical to furnish goggles or masks for employees unloading the trucks.

The pertinent portion of the statute, 40 O.S.1951 § 72, relied upon by plaintiff, provides:

"Restrictions on employment of children under sixteen.—No child under the age of sixteen years shall be employed or permitted to work at any of the following occupations: Oiling or assisting in oiling, operating, wiping or cleaning any dangerous machinery, or adjusting any belt to any such machinery, while in motion; operating, or assisting in operating, circular or band saws; steam boilers, steam, machinery, or other steam generating apparatus, rolling-mill machinery, punches or shears; washing, grinding or mixing mills; passenger or freight elevators * * *".

Defendant concedes failure to comply with statutory requirements as to investigation of plaintiff prior to tendering employment. However, it may be noted that the general rule, recognized in this jurisdiction, is that a minor's misrepresentation of his age does not relieve an employer of the burden of the statute when such minor is injured while employed in a place prohibited by statute. See Tulsa Cotton Oil Co. v. Ratley, 59 Okl. 45, 157 P. 1056.

Supporting the contention that plaintiff was employed in operating, or assisting in the operation of, dangerous machinery within purview of the statute, supra, a twofold argument is presented. The first portion of such argument is that the statute was enacted in 1909 when a conveyor line for a bottling plant was unknown. Plaintiff urges that, in view of the general language used relative to operation of dangerous machinery, the legislature not only must have intended to include dangerous machinery as then known, but such other machinery as industrial progress might bring into use. Thus plaintiff concludes the trial court erred in giving too narrow an interpretation, by construing the statute as having been intended to correct only the specific problems mentioned, without consideration of future contingencies which might arise from industrial operations.

The most serious criticism of this argument is to be found in two generally accepted rules of statutory construction, and in comparison of the statute herein considered with an analogous situation reflected in the provisions of the Workmen's Compensation Law. 85 O.S.1951 §§ 1–176.

The first rule of construction is expressed in 50 Am.Jur., Statutes, Sec. 244, as follows:

"As exceptions in a statute strengthen the force of the law in cases not accepted, so enumerations weaken it in cases not enumerated. Indeed, it is a general principle of interpretation that the mention of one thing implies

the exclusion of another; Expressio uniun est esclusio alterius. The rule applies even though there are no negative words excluding the things not mentioned."

A second rule of construction is that courts have no legislative authority and should avoid judicial legislation. In 50 Am.Jur., Statutes, Sec. 229, it is said:

"The general rule is that nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself, and that a statute should not be construed any more broadly or given any greater effect than its terms require. Where the language of the statute is clear in limiting its application to a particular class of cases and leaves no room for doubt as to the intention of the legislature, there is no authority to transcend or add to the statute which may not be enlarged, stretched, or expanded, or extended to cognate or related cases not falling within its provisions."

See Salaney v. Ferris, 201 Okl. 236, 204 P.2d 270.

A further reason, and as persuasive as that based upon rules of statutory construction, may be observed in considering section 2 of the Workmen's Compensation Act. 85 O.S.1951 § 2. On numerous occasions since originally enacted in 1915 the legislature has seen fit to broaden application of the act by including types of employment not defined as hazardous in the first enactment. Obviously this has been done solely to extend benefits of the compensation law to workmen in occupations not specifically mentioned originally, although the occupations added by amendment were related to those mentioned in the first instance. The argument made herein by plaintiff could have been made with equal force in those instances. The fact the legislature saw fit, in successive amendments, to extend coverage to occupations not specifically mentioned clearly shows the original intent of the legislature was that the act should cover only the types of employment enumerated.

To hold that, by enactment of section 72, supra, the legislature intended it to apply not only to dangerous machinery as then known, but to all types and kinds of machines which would evolve out of myriad industrial processes in the future would necessitate transcending and enlarging of such statute. The Supreme Court is without power or authority to so amend a statute by judicial interpretation as to include matters not clearly within contemplation of the legislature in the original enactment. Thus, by judicial interpretation, we would declare that the single fact of legislative action upon the subject in 1909 disclosed the legislative intention was the inclusion of all future industrial processes and developments, including those not even envisioned by the mind of men until the present decade. Under any reasonable interpretation of the language used this is impossible. Had such been the intent of the act it would have been within the province of the legislature so to declare at any time. The act should be considered as written. No adequate reason appears for concluding the true legislative intent was not confined within the language used.

The remaining portion of plaintiff's argument asserts the trial court erred in refusing to hold defendant's operations within the terms of the statute, supra. As a basis for this plaintiff urges the motor trucks, especially designed truck beds, mechanical conveyor belts, and the required manual handling of bottles in cases, constituted an industrial process falling within the inhibition of the statute against operating, or assisting in operation of dangerous machinery. Clearly the only manner in which plaintiff could come within the terms of the statute would be in the operation of dangerous machinery. The argument that because glass bottles, stationary motor trucks with steel beds and the conveyor belts were used together in an industrial process, so that all together became dangerous machinery which the statute was intended to cover is unpersuasive and requires no further discussion.

We are of the opinion the trial court correctly found the mechanism used

by defendant was not a dangerous machine within contemplation of 40 O.S.1951 § 72. The trial court's findings and judgment was of the same force and effect as the verdict of a properly instructed jury, and the general verdict was a finding of every specific thing necessary to sustain such judgment. Givens v. Western Paving Co., Okl., 261 P.2d 450.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.