**318**

Eugene CAPPS and Fay Capps, husband and wife, Plaintiffs in Error,

v.

WHITEGRASS – WATERHOLE FLOOD CONTROL AND SOIL CONSERVANCY DISTRICT, a corporation, Defendant in Error.

No. 38880.

Supreme Court of Oklahoma.

Feb. 7, 1961.

Lee Welch, Antlers, for plaintiffs in error.

Ed R. LeForce, Idabel, for defendant in error.

BERRY, Justice.

The defendant in error, Whitegrass-Waterhole Flood Control and Soil Conservancy District, a corporation, hereafter referred to as "condemnor", was created under the "Conservation Act of Oklahoma", which Act was codified as 82 O.S.1951 § 531 et seq., as amended.

Plaintiffs in error, Eugene Capps and Fay Capps, husband and wife, hereafter referred to as "condemnees" or by name, and a number of other persons unsuccessfully objected to the purpose for which condemnor was being formed and for said reason objected to the creation of condemnor. Condemnees employed Mr. Finney to present their objections to the creation of condemnor.

Following the creation of condemnor, it was learned that in order to carry out the project for which it was formed it would be necessary to acquire a portion of the land owned by condemnees, and this proceeding

to condemn 13.75 acres of condemnees' land was instituted.

Prior to the appointment of commissioners in the condemnation proceedings, the condemnees asserted by affidavits and otherwise that the condemnor, before the institution of this proceeding, wholly failed to make a "good faith effort" to negotiate for the amicable acquisition by purchase of the land which condemnor seeks to condemn; that for said reason condemnor was wholly without right, power or authority to maintain the instant proceeding and the trial court was wholly without jurisdiction to entertain the proceeding. This contention was rejected by the trial court and commissioners were appointed to assess damages attributable to the condemnation. From said action condemnees perfected this appeal.

In support of their position, condemnees cite Koch et al. v. Oklahoma Turnpike Authority, 208 Okl. 556, 257 P.2d 790, 794. This was said in the body of the opinion promulgated in the cited case:

"It is contended by defendants that under our statutes 66 O.S.1951 § 53, and 69 O.S.1951 § 658, it is necessary for a condemnor in a condemnation proceedings to allege and prove that he made a bona fide effort to acquire the property sought to be condemned by purchase before instituting condemnation proceeding and that such requirement is jurisdictional. We think this contention, as a general rule, under a statute like our own, is correct. * * *"

For authority touching upon the proposition that it is incumbent upon a person wishing to acquire property for a public purpose, to attempt to purchase the property before instituting condemnation proceedings, see Watkins et al. v. Board of Com'rs of Stephens County et al., 70 Okl. 305, 174 P. 523; Delfield v. City of Tulsa et al., 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032; 18 Am.Jur. "Eminent Domain", Sec. 319, p. 962, and 29 C.J.S. Eminent Domain § 224, p. 1163.

The statute (69 O.S.1951 § 658) last referred to in the foregoing quotation relates solely to the exercise of the power of condemnation by the Oklahoma Turnpike Authority. It is stated in part in said section that "whenever a reasonable price cannot be agreed upon, * * * the Authority is hereby authorized and empowered to acquire (property), by the exercise of the power of condemnation." The statute which relates directly to this proceeding is 66 O.S.1951 § 53. It is provided in substance in said statute that if an owner "shall refuse to grant the right of way through and over his premises", eminent domain proceedings may, in a proper case, be instituted to condemn the land which the owner has refused to grant. The cited statute is made applicable to proceedings such as this. See 82 O.S.1951 § 571.

The parties agree that the sole issue presented by this appeal is whether condemnees, prior to the institution of this proceeding, refused to grant the rights that condemnor seeks to acquire by said proceeding. The evidence bearing upon said issue can be summarized as follows:

A Mr. Martin who was employed by condemnor to assist in securing property necessary in carrying out the purpose for which condemnor was organized, testified in substance that he talked with condemnees in the office of condemnor's attorney; that he advised condemnees that if they would not donate the property that condemnor sought to acquire from them, condemnor would decide whether it wished to purchase the land; that if the condemnees would return for a conference in about a week or ten days, witness felt sure that the parties would not "have any trouble in coming to an agreement."

Condemnor's attorney testified relative to what was said at the above-mentioned conference. He testified in part that at the conference "Mr. Capps told us he couldn't give us an easement across the land nor a right-of-way for the reason that it was his home, and he had been in the Service, and worked and bought it, and at that time told us he was not interested in our getting it

under any circumstances. However, he did say he and his wife would discuss it further and he would let us know whether or not we might acquire it by agreeable means. He never did let me know personally about it. Thereafter I was informed by Mr. Tom Finney—".

An objection was interposed relative to what Mr. Finney advised condemnor's attorney on the grounds that Mr. Finney at no time had authority to represent condemnees concerning acquisition of the property rights that condemnor sought to acquire from condemnee. This objection was overruled.

Condemnor's attorney testified further that prior to the institution of this action, he, in behalf of condemnor, made an offer to Mr. Finney of $35 an acre for the 13.75; that this offer was rejected; that Mr. Finney stated that condemnees wanted $200 an acre for said land; that Mr. Finney stated that he was representing condemnees and several other interested property owners who had refused to donate land to condemnor; that to condemnor's attorney's knowledge a "dollar and cents" offer was not made directly to condemnees by a representative of condemnor prior to institution of the instant proceedings; that prior to considering the contention here made by condemnees and before an order appointing commissioners was made, the trial judge suggested that the attorneys for the respective parties attempt to negotiate an amicable settlement; that pursuant to said suggestion said attorneys negotiated; that witness, in behalf of condemnor, made an offer of $35 an acre; that condemnees' present attorney stated "that his clients felt that $200.00 an acre was what they wanted."

Condemnees' attorney testified that he didn't tell condemnor's attorney that condemnees "would not take $35 per acre. I told him that they now wanted $200 an acre"; that he made clear to condemnor's attorney that he was not negotiating in behalf of condemnees; that since the proceeding had been instituted prior to their conference "the time for negotiation was past."

The following questions were propounded to Mr. Capps, and the following answers were given to said questions:

"Q. Now, did you ever authorize Mr. Finney to negotiate with the other side about what you would be willing to be paid in dollars and cents for the property? A. I did not in dollars and cents.

"Q. Did you ever authorize him to have negotiation about it? A. The 6th of March hearing, he told us to meet him at his office and he said it would be—I believe he said he could negotiate with them to get a fair price if we would be willing. I said sure, but they never did offer anything for it.

"Q. Did anybody on behalf of the corporation ever make any dollars and cents offer? A. They never did offer me one penny for the land."

Mr. Capps testified that at the first herein referred-to conference, condemnees were asked to donate 60 acres of land, that "When I went to Mr. LeForce's office and met him and Mr. Martin they asked me to come back in a week or ten days and they would try to work out something. I was tied up and I didn't get back."

Neither of the condemnees denied that they advised Mr. Finney that they wanted $200 an acre for the land that condemnor seeks to condemn nor that Mr. Finney did not advise them prior to the institution of this proceeding that condemnor had offered $35 an acre for said land.

The evidence shows that condemnor was originally of the opinion that the land which it sought, to carry out the purpose of its creation, would be donated and that many landowners in fact donated land; that upon condemnees making known that they would not make a grant on said basis, condemnees agreed to negotiate for a purchase of the land; that said negotiations were not carried on directly with condemnees for the

reason condemnees failed to personally confer with condemnor following the conference first referred to herein.

■■ As we read Mr. Capps' testimony, he admits that Mr. Finney was authorized to negotiate with condemnor relative to the purchase of the land. The fact that Mr. Finney was not authorized to make a "dollar and cents" offer to condemnor in condemnees' behalf would not show nor mean that Mr. Finney was not authorized to negotiate with condemnor and obtain the best offer that condemnor would make for the land. The evidence is clear that Mr. Finney did negotiate with condemnor and that condemnor prior to institution of this proceeding made known to him that condemnor would pay $35 an acre for the land. This latter fact is of controlling significance. Mr. Finney's knowledge concerning said offer is imputable to condemnees and they are charged with knowledge of said offer. This is said in the first paragraph of the syllabus to Newson v. Watson et al., 198 Okl. 220, 177 P.2d 109:

> "The knowledge of an agent is imputable to the principal in connection with any transaction conducted by or participated in by the agent in behalf of the principal."

There was no direct evidence as to the value of the 13.75 acres of land. The commissioners fixed condemnees' damages at $393.75. The value of the 13.75 acres was, therefore, fixed at less than $35 an acre. This tends to show that condemnor was in good faith in making an offer of $35 an acre for the land prior to the institution of this action.

We are of the conviction that the evidence shows that condemnor made an effort in good faith to purchase the land which it seeks to condemn prior to the institution of this proceeding.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.