2001 OK 114

**Tony BARNHILL, Petitioner,**

v.

**MULTIPLE INJURY TRUST FUND and The Workers' Compensation Court, Respondents.**

**No. 94,575.**

Supreme Court of Oklahoma.

Dec. 11, 2001.

John F. Bates, Jack G. Zurawik and Frank Gruntkowski, Tulsa, OK, for petitioner.

Georgiana Peterson and Gregory J. Crawford of Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, OK, for respondent, Multiple Injury Trust Fund.

LAVENDER, J.

¶1 We decide whether an April 4, 2000 order of a Workers' Compensation Court (WCC) trial judge correctly denied a request by petitioner, Tony Barnhill (Barnhill or claimant) to require respondent, the Multiple Injury Trust Fund (Fund)[1] to pay him permanent total disability (PTD) benefits that claimant asserts "accrued" between the date of an August 1999 PTD order and the date (mid-February 2000) Fund was directed by the PTD order's terms to begin making weekly PTD payments to him. We hold the trial judge correctly denied the request based on 85 O.S. Supp.1995, § 172 (effective November 4, 1994)—the applicable law on the date of claimant's last job-related injury and the law that unambiguously set the boundaries of Fund's PTD liability to him. Title 85 O.S. Supp.1995, § 172 (E) required a certain formula-based time period elapse before commencement of weekly PTD payments by Fund, where the employer or insurer responsible for paying permanent partial disability (PPD) benefits to a claimant for his/her last job-related injury paid the PPD compensation in a lump sum—the undisputed factual situation involved in this case.[2]

¶2 In that the trial judge was correct, the Court of Civil Appeals (COCA) erred in relying on 1999 legislative amendments to § 172 to justify (a) vacating the April 2000 WCC order and (b) remanding with instruction to the WCC to direct Fund to pay claimant "accrued" PTD benefits. No "accrued" benefits are owed under relevant law, i.e. 85 O.S. Supp.1995, § 172. Today's opinion is consistent with *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, 33 P.3d 302 and *Stidham v. Special Indemnity Fund*, 2000 OK 33, 10 P.3d 880, recent decisions of this Court.

## PART I. FACTS AND PROCEDURAL HISTORY.

¶3 It is uncontested that when claimant suffered his last work-related injury on or about October 31, 1995, he was considered a "physically-impaired person" under the Special Indemnity Fund Act (Act)[3] by virtue of several previously adjudicated job-related injuries. Also undisputed is the fact claimant, his employer and employer's insurer settled Barnhill's workers' compensation claim for the 1995 injury by a joint petition settlement approved by the WCC in an August 1998 order. The settlement: 1) represented a determination claimant suffered 28% PPD from the 1995 injury and 2) was paid by employer/insurer in a lump sum.[4] After the settlement, as the Act allows, claimant sought PTD benefits from Fund, asserting combination of the last injury with his prior

---

1. The Multiple Injury Trust Fund (Fund) was formerly known as the Special Indemnity Fund. The name was changed in 1999. 85 O.S. Supp. 1999, § 173.

2. Title 85 O.S. Supp.1995, § 172, as the text notes, was the version of § 172 in effect on the date of claimant's last work-related injury and it became effective on November 4, 1994. *See* 1994 Okla. Sess. Laws (Second Extra. Sess.), Ch. 1, §§ 42 and 56. Subsection (E) was added to § 172 in a Second Extraordinary Session of the Oklahoma Legislature and was the only change made at that time to § 172. *See* 1994 Okla. Sess. Laws (Second Extra. Sess.), Ch. 1, § 42.

3. 85 O.S.1991, § 171 et seq., as amended.

4. The settlement amount was $31,000—$28,495 designated to be for the permanent partial disability (PPD) caused by the 1995 injury and the remaining $2,505 for disfigurement. Although we need not detail the amounts, the joint petition indicates part of the settlement sum went to pay claimant's attorney fees and the order approving the joint petition shows part went to pay a Special Indemnity Fund Tax. The joint petition also reflects claimant received about another $31,000 from employer or its insurer for a period of temporary total disability (TTD) following the 1995 injury.

injuries rendered him permanently totally disabled.

¶ 4 In an August 1999 order the WCC trial judge ruled that combination of the previously adjudicated on-the-job injuries and the 1995 injury did render him permanently totally disabled.[5] The order also provides in pertinent part:

> THAT on or about AUGUST 19, 1998, claimant joint petitioned [ ] his workers' compensation claim . . . for injury (or injuries) occurring on OCTOBER 31, 1995, for a total of [$]31,000.00; that when divided by claimant's rate of $205.00 equals 139 weeks which must elapse from the date of last payment of temporary total disability (June 16, 1997) before the . . . Fund begins weekly payments to claimant (less attorney fee).
>
> THAT once benefits commence, [the Fund] is ordered to pay compensation to claimant at the rate of $205.00 per week until the claimant (date of birth: April 29, 1964) reaches the age of 65 years, or for a period of five (5) years, whichever is longer (less attorney fee).[6]

The one hundred thirty-nine (139) weeks required to elapse before commencement of weekly PTD benefits ended about mid-February 2000.[7]

¶ 5 At the end of February 2000 Barnhill, in essence, sought an order from the WCC to have Fund pay him (apparently in a lump sum) an amount equal to the ordered PTD rate times the number of weeks between the date of the August 1999 PTD order and the date weekly PTD payments were scheduled to begin in February 2000 under the PTD order's terms.[8] The WCC trial judge denied the request in an April 2000 order, obviously concluding no PTD benefits "accrued" during that period under applicable law. Claimant appealed.

¶ 6 The COCA vacated the WCC's April 2000 order. It basically held: (1) 1999 legislative amendment of § 172, including addition of the following last sentence to § 172(B), "Multiple Injury Trust Fund awards accrue from the file date of the court order finding the claimant to be permanently and totally disabled[ ]", authorized "accrual" of PTD payments from the time claimant was adjudicated totally disabled (i.e. the date of the PTD order) to the date the lapse-time period ended; (2) the 1999 amended version, as opposed to showing legislative intent to change 85 O.S. Supp.1995, § 172, was intended to clarify the law and, thus, should be retroactively applied; and (3) apparently, that the "accrued" amount was due claimant immediately after expiration of the lapse-time period. We also note the 1999 amended version of § 172 deleted the lapse-time formula contained in the 1995 version of § 172(E).[9]

¶ 7 Three decisions of the COCA [two from Division I and one from Division II] are generally contrary to the COCA decision in the instant case. These cases hold the 1999 amended version of § 172 does not retroactively apply when a claimant's last job-relat-

---

5. The August 1999 order details previous job-related injuries in 1991, 1992, 1993 and 1994.

6. The one hundred thirty-nine (139) week time period was actually arrived at by dividing $28,495 (that part of the settlement representing PPD) by $205 and the disfigurement amount was not included in the equation.

7. Recently, in *Multiple Injury Trust Fund v. McGary*, 2001 OK CIV APP 68, 24 P.3d 896, Division I of the Court of Civil Appeals (COCA) held the lapse-time period mandated by 85 O.S. Supp.1995, § 172 (E) was intended by the Legislature to begin running from the last date TTD was paid by the employer or its insurer, rather than from the date of the PPD joint petition settlement for the last compensable injury. Certiorari was not sought from *McGary*. In *Multiple Injury Trust Fund v. Pullum*, 2001 OK 115, 37 P.3d 899, also decided today, we recognize *McGary* is correct in its treatment as to when the

lapse-time period of § 172(E) was intended by the Legislature to begin running.

8. No issue is raised in this appeal as to whether Fund timely began weekly permanent total disability (PTD) benefits in conformity with the August 1999 order at the end of the one hundred thirty-nine (139) week period. We also note that in his May 17, 2001 brief in opposition to certiorari, claimant seems to indicate, or allude to, his belief that the lapse-time period will not expire until April 2002. Under our review of the record, we cannot understand the indication or such a belief. Under the plain wording of the August 1999 order awarding PTD benefits, the lapse-time period began running on June 16, 1997 (the last date TTD was paid) and would end about mid-February 2000.

9. For the pertinent terms of 85 O.S. Supp.1999, § 172 (B) and (E) see note 14, *infra*.

ed injury occurred before the amendment's effective date. See *Multiple Injury Trust Fund v. Hill,* 2001 OK CIV APP 8, 16 P.3d 1143; *Fry v. Multiple Injury Trust Fund,* 2000 OK CIV APP 129, 16 P.3d 1132; *Spurgin v. Multiple Injury Trust Fund,* 2000 OK CIV APP 85, 10 P.3d 240. Fund sought certiorari, which we previously granted to resolve the conflict in the COCA's decisions.

## PART II. STANDARD OF REVIEW.

■ ¶ 8 This case calls for determining the statute-based liability of Fund to claimant where no factual dispute exists.[10] A question of law concerning ascertainment of legislative intent faces us, which necessarily involves statutory interpretation. Statutory interpretation, entailing a legal issue, demands a *de novo* review standard,[11] i.e. a review in which an appellate court has plenary, independent and non-deferential authority to reexamine a trial court's legal rulings.[12]

## PART III. FUND'S LIABILITY TO PAY PTD BENEFITS WAS STATUTORILY SET BY *85 O.S. SUPP.1995, § 172,* THE LAW IN EFFECT AT THE TIME OF CLAIMANT'S LAST JOB–RELATED INJURY; BECAUSE THE 1999 AMENDMENT OF § 172 DOES NOT REPRESENT A CLARIFICATION OF EARLIER LAW AND IS NOT ACCORDED RETROSPECTIVE APPLICATION BY EXPRESS LANGUAGE OR BY NECESSARY IMPLICATION, WE FIND NO LEGISLATIVE INTENT TO AFFORD THE 1999 AMENDMENT RETROSPECTIVE SWEEP.

¶ 9 In *Special Indemnity Fund v. Archer,* 1993 OK 14, 847 P.2d 791, 794–95, this Court held that the law in effect at the time of an employee's later/subsequent job-related injury is to be used in fixing Fund's liability. The pertinent terms of 85 O.S. Supp.1995, § 172 (B) and (E)—which (a) were the effective law at the time of Barnhill's last compensable injury and (b) address Fund's liability when separate, multiple on-the-job injuries result in PTD—provide as follows:

B. If such combined disabilities constitute [PTD], as now defined by the Workers' Compensation Act, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury. In addition, the employee shall receive full compensation for his combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment. After payments by the employer or his insurance carrier have ceased, the remainder of such compensation shall be paid out of the [ ] Fund . . . in periodic installments. In [PTD] cases the same shall be paid in periodic payments, as set forth in Section 22 of this title, and shall not be commuted to a lump-sum payment. The compensation rate for permanent total awards from the [ ] Fund shall be the compensation rate for [PPD] paid by the employer in the last combinable compensable injury. Permanent total awards from the [ ] Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer.

E. All weekly payments for [PPD] shall be paid before any claim for benefits

---

**10.** In *Stidham v. Special Indemnity Fund,* 2000 OK 33, 10 P.3d 880, we unequivocally recognized the extent of Fund's liability to a "physically impaired person" who suffers a later work-related injury is entirely statute-based.

**11.** *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–1123. See also *Baptist Medical Center v. Pruett,* 1999 OK CIV APP 39, ¶ 11, 978 P.2d 1005, 1008, where it was held: "[m]atters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling." See also *Tibbetts v. Sight 'N Sound Appliance Centers,* 2000 OK CIV APP 47, ¶ 6, 6 P.3d 1064, 1066.

**12.** *State ex. rel. Jones v. Baggett,* 1999 OK 68, ¶ 4, 990 P.2d 235, 238; *Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100, 1103 f. n. 1.

against the [ ] Fund may be paid. In the case of a lump-sum [PPD] award or settlement, such award or settlement shall be divided by seventy percent (70%) of the employee's weekly wage up to a maximum of fifty percent (50%) of the state's average weekly wage, to determine the number of weeks which must elapse before a claim against the [ ] Fund may be paid.

¶ 10 In *Samman v. Multiple Injury Trust Fund, supra,* this Court construed 85 O.S. 1991, § 172 (B) in the face of a claimant's contention he was entitled to "accrued" PTD benefits during the time period between the date of the PTD order against Fund and the date of last payment of PPD benefits by the employer/insurer for the last work-related injury, where the employer/insurer paid the PPD benefits in periodic weekly payments, rather than as here, via a lump-sum joint petition settlement. The 1991 version of § 172 was involved, as it was in effect when the last job-related injury occurred in August 1992. Title 85 O.S.1991, § 172 (B) remained unchanged until its amendment in 1999.[13] *Samman* stated:

According the ... statutory language [of 85 O.S.1991 § 172 (B) ] its plain and ordinary meaning leads to a single, inescapable conclusion, i.e., the Fund's liability to make PTD payments can only be satisfied through *periodic installments* which *can*

begin only after the employer's final PPD payment. Under the law applicable at the time of [claimant's] last compensable injury, a WCC order—that directs accrual of PTD payments while the last employer is making PPD payments and/or then orders a lump-sum payment of these so-called accrued PTD benefits from the Fund—is outside the WCC's jurisdiction. (footnote omitted)(emphasis in original)

2001 OK 71, at ¶ 11, 33 P.3d at 306.

¶ 11 *Samman* also rejected the argument that addition of the last sentence to § 172(B) by 1999 legislative amendment—which is quoted in ¶ 6 of **PART I** above—was intended as a clarification subject to retroactive application.[14] We said:

The primary goal of statutory construction is to ascertain and follow legislative intention. When the Legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and a statute will be applied as written. In other words, the plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent. The Court also recognizes that by amending a statute the Legislature may have

13. *See* 1999 Okla. Sess. Laws, Ch. 420, § 8; 1994 Okla. Sess. Laws (Second Extra. Sess), Ch. 1, § 42; 1992 Okla. Sess. Laws, Ch. 294, § 11.

14. The full text of 85 O.S. Supp.1999, § 172 (B) provides:

B. If such combined disabilities constitute [PTD], as defined in section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the employee shall receive full compensation for the combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of per cent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment. After all [PPD] payments by the employer or the insurance carrier of the employer have ceased, the remainder of the compensation shall be paid out of the [ ] Fund provided for in Section 173 of this title, in periodic installments. In [PTD]

cases the same shall be paid in periodic payments, as set forth in Section 22 of this title, and shall not be commuted to a lump-sum payment. The compensation rate for permanent total awards from the [ ] Fund shall be the compensation rate for [PPD] paid by the employer in the last combinable compensable injury. Permanent total awards from the [ ] Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. [] Fund awards shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled.
Subsection (E) of § 172 was also amended by 1999 legislation. Title 85 O.S. Supp.1999, § 172 (E) provides:
"Reopening any prior injury claim other than the last employer injury claim shall not give a claimant the right to additional [ ] Fund benefits. All weekly payments by the last employer or the insurance carrier of the employer for [PPD] shall be paid before any claim for benefits against the [ ] Fund may be paid."
As can be seen, the formula-based lapse-time period was deleted from § 172(E).

intended (1) to change existing law or (2) to clarify ambiguous law. The exact intent is ascertained by looking to the circumstances surrounding the amendment. If the earlier version of a statute definitely expresses a clear and unambiguous intent or has been judicially interpreted, a legislative amendment is presumed to change the existing law. Nonetheless, if the earlier statute's meaning is in doubt or uncertain, a presumption arises that the amendment is designed to clarify, i.e., more clearly convey, legislative intent which was left indefinite by the earlier statute's text.

Resolution of the issue presented ... requires the Court to examine the meaning of 85 O.S.1991 § 172 (B) to determine if the relevant statutory language is susceptible of ambiguous meaning. We have ... concluded that the statutory language in issue is neither unclear nor open to multiple meanings. Under the law in effect at the time of [claimant's] last compensable injury, PTD payments were mandated to be by periodic installments, payable after PPD payments by the employer or his insurance carrier had ceased, and were not commutable to lump-sum payments.

*Sans* ambiguity—which today we find does *not* exist—in the 1991 version of § 172(B), the 1999 amendment of the same cannot be said to have been enacted by the Legislature to clarify the earlier law. Further, a reading of the later amendment's language reveals no legislative intent to afford retrospective force to it. Under the circumstances here present the retroactive application of 85 O.S. Supp.1999 § 172 (B) is simply not sustainable. (footnotes omitted)(emphasis in original)

*Samman,* 2001 OK 71, at ¶¶ 13–15, 33 P.3d at 307–308.

¶ 12 Earlier, in *Stidham v. Special Indemnity Fund, supra,* the last job-related injury having occurred **after** the effective date of 85 O.S. Supp.1995, § 172, but **before** the 1999 amendment(s), we were confronted with interpreting the meaning of the lapse-time pe-

riod provision found in § 172(E) involved in this case.[15] In *Stidham,* like here, the PPD claim for the last work-related injury was settled via a joint petition and paid by the responsible employer/insurer in a lump-sum. The PTD order against Fund had directed it to begin paying weekly PTD benefits from the order's date, rather than at the end of the lapse-time period as mandated by § 172(E). When Fund failed to make payments from the order's date, claimant sought the unpaid installments in a lump sum and he requested their total amount be certified as a judgment for enforcement in the district court. The WCC trial judge denied the request and a three-judge panel of the WCC upheld the denial.

¶ 13 We likewise sustained the denial. *Stidham* ruled, to the extent the initial PTD order had sanctioned weekly PTD payments during the lapse-time period, it was facially void and outside the jurisdiction of the WCC because in obvious non-compliance with § 172(E)'s statute-imposed liability of Fund. In rejecting the claimant's assertion he was entitled to the weekly PTD benefits—in a lump sum—argued to have "accrued" from the date of the PTD order under that order's terms, we said:

[Section 172(E)] *now directs the Fund benefits to begin at a time certain.* Their payment may not commence *until* employer-paid weekly [PPD] benefits had come to an end, *or in the case of a lump-sum award (or settlement), until a statutory calculation of time for payment would have passed.* The manner currently prescribed by § 172(E) for fashioning the payment schedule for an award against the Fund is the *outer limit of the Fund's statutory liability.* It must hence also be construed *as the jurisdictional boundary of the trial tribunal's power to act.* (emphasis in original)

---

**15.** Our opinion in *Stidham,* note 10, *supra,* refers to 85 O.S. Supp.1994, § 172 (E), rather than to the 1995 Oklahoma Statutes Supplement. As set out in note 2, *supra,* subsection (E) became effective on November 4, 1994; it was added to § 172 in a Second Extraordinary Session of the Oklahoma Legislature; and was the only change made at that time to § 172. It first appears in the 1995 Oklahoma Statutes Supplement, rather than the 1994 Supplement.

*Stidham*, 2000 OK 33, at ¶ 13, 10 P.3d at 886.[16]

¶ 14 Even if we assume *Stidham* does not absolutely control our decision here because an express evaluation of the 1999 legislative amendment of § 172 was not made there, *Stidham* clearly foreshadowed the decision we reach today in the instant matter. In plain and unambiguous language, 85 O.S. Supp.1995, § 172 (E) (in effect when Barnhill's last job-related injury occurred) mandated a formula-based time period elapse before PTD payments by Fund were required to begin, where the employer/insurer responsible for the PPD benefits for the last on-the-job injury paid claimant in a lump sum, as opposed to making weekly PPD payments. Title 85 O.S. Supp.1995, § 172 (B) and (E), when read together, had the effect of ousting the WCC of authority to direct Fund to pay PTD either (1) during the time period a claimant is receiving (from his/her employer or its insurer) **weekly** PPD compensation for the last work-related injury or (2) when the PPD compensation has been paid in a lump sum, **during an equivalent statutorily-prescribed/formula-based time period.** The lapse-time period mandated by § 172(E) was obviously intended to require **a temporal equivalent** period of time to elapse in lump-sum joint petition PPD settlement situations as would pass or run when the employer/insurer responsible for paying PPD benefits for the last job-related injury did so in periodic weekly payments. No other interpretation of the 1995 versions of § 172(B) and (E) is tenable. In other words, no PTD benefits from Fund **were due or "accruing"** during the time an employer/insurer was actually paying weekly PPD benefits, **or during an equivalent period of time dictated by § 172(E).** There is simply no ambiguity or lack of clarity in the language of the 1995 version of § 172 that could be interpreted to allow for the "accrual" or "build-up" of weekly PTD benefits from Fund during the lapse-time period.[17]

▮▮▮▮▮ ¶ 15 Since the law in effect when Barnhill last suffered a work-related injury so plainly and unequivocally expressed legislative intent, the 1999 amendment of § 172 cannot be deemed to have merely clarified the earlier law. *Samman, supra,* 2001 OK 71, at ¶ 15, 33 P.3d at 308. Further, were we to infer retroactive reach to the 1999 legislation and ascribe to it the meaning given by the COCA—that PTD benefits are owed and "accruing" from the date of the PTD order rather than from the expiration date of the lapse-time period mandated by § 172(E)—we would be attributing to the Legislature an

**16.** *Stidham*, note 10, *supra,* also recognized that 85 O.S. Supp.1995, § 172 (E) abrogated the teaching of *Special Indemnity Fund v. Bryant,* 1952 OK 13, 239 P.2d 1014, to the extent *Bryant*—under the then applicable version of § 172—had allowed Fund benefits to commence immediately after a lump-sum payment by employer of a settlement on a joint petition of the benefits due for the last job-related injury. *Stidham,* 2000 OK 33, at ¶ 12–13, 10 P.3d at 886.

**17.** Claimant, in essence, argues in his merit brief of June 20, 2000 that because 85 O.S. Supp. 1995, § 172 (B) contains the following sentence, "[i]n [PTD] cases the same shall be paid in periodic payments, as set forth in [85 O.S. Supp. 1995, § 22 ], and shall not be commuted to a lump-sum[,]" and § 22(1) generally provides that PTD shall be paid during the continuance of the total disability, that benefits from the Fund are owed—even if not immediately payable—from the date of the PTD order. The argument is unavailing. Section 172(B)'s reference to § 22 is merely meant to point to that section of the Workers' Compensation Act, 85 O.S.1991, § 1 et seq., as amended, to be consulted for the amount of PTD periodic weekly payments to be made by the Fund. It is 85 O.S. Supp.1995, § 172 (B) and (E) which control the duration of the statutory liability of the Fund to claimant, not § 22(1). The time restrictions found therein are controlling. See *Multiple Injury Trust Fund v. Hill,* 2001 OK CIV APP 8, at ¶ 8, 16 P.3d 1143, 1146. Our opinions in *Stidham,* note 10, *supra* and *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, 33 P.3d 302 allow for no other conclusion. Under the 1995 version of § 172 PTD payments from Fund begin (1) when employer-paid weekly PPD benefits come to an end (where employer/insurer pays the PPD benefits associated with the last work-related injury in weekly payments) or (2) when the statutory lapse-time period expires (where employer/insurer pays the PPD benefits associated with the last work-related injury via a lump-sum settlement). *Stidham,* note 10, *supra,* unequivocally sets this out. 2000 OK 33, at ¶ 13, 10 P.3d at 886. Further, rather than being obligated to pay PTD benefits during the continuance of the total disability, § 172(B) only requires Fund to make PTD payments until a claimant reaches the age of sixty-five (65) years, or for five years, whichever is longer, regardless of whether the claimant's permanent and total disability continues thereafter.

intent to increase the amount of benefits Barnhill is entitled to recover from Fund under the applicable 1995 law. Instead of being entitled to Fund benefits from February 2000 (lapse-time period expiration) he would be entitled to Fund benefits from August 1999 (PTD order date).[18] Thus, affording the amendment retroactive sweep with the meaning given by the COCA would substantively increase Fund's ultimate liability to him. No intention to retroactively provide such increased benefits to someone who suffered their last job-related injury prior to the 1999 amendment is expressed or necessarily implied from any legislative language we can discern in the 1999 version of § 172. Without a plainly expressed or necessarily implied legislative intention to do so it would be improper for us to supply such retroactive reach. Compare *Special Indemnity Fund v. Dailey*, 1954 OK 167, 272 P.2d 395 (legislative intention to afford retrospective as well as prospective application where legislative amendment did not change liability of Fund and went merely to the method of payment).

▬ ¶ 16 The general rule is that statutes have prospective operation unless the purpose and intent of the Legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used. *Houck v. Hold Oil Corp.*, 1993 OK 167, 867 P.2d 451, 457. In case of doubt, the doubt should be resolved against retrospective effect. *Phillips v. H.A. Marr Grocery Company*, 1956 OK 104, 295 P.2d 765, 768. As with other matters concerning statutory interpretation, whether to give a statute prospective or retroactive effect is controlled by the transcendent canon of statutory construction, to wit: to give effect to the legislative will. *Houck v. Hold Oil*

*Corp., supra*, 867 P.2d at 457. As *Samman* also recognized, "a reading of the [1999] amendment's language reveals no legislative intent to afford retrospective force to it." 2001 OK 71, at ¶ 15, 33 P.3d at 308. In the final analysis, our view is that the 1999 amendment of § 172, as it pertains to the lapse-time period applied to Barnhill's PTD award against Fund, was not intended to have retrospective force. Accordingly, he is not entitled to PTD benefits from Fund during the lapse-time period of 85 O.S. Supp. 1995, § 172 (E). The WCC trial judge correctly rejected his quest to obtain such benefits and the COCA erred when it vacated the trial judge's April 2000 order.[19]

## PART IV. SUMMARY.

¶ 17 Claimant seeks to impose upon Fund liability for the payment of PTD benefits he argues "accrued" from the filing date of the order adjudicating him permanently totally disabled. The statute that set Fund's liability to him for PTD benefits was the one in effect on the date of his last job-related injury, 85 O.S. Supp.1995, 172. When applied to the pertinent undisputed facts involved in this case, that law plainly and unambiguously mandated a statutorily-prescribed/formula-based lapse-time period before Fund was responsible for commencing periodic PTD benefit payments to him. Claimant's quest here is incompatible with the mandatory lapse-time formula and he is not entitled to the so-called "accrued" benefits he seeks. The WCC trial judge correctly recognized claimant had no statutory entitlement to the sought-after benefits. Further, because 85 O.S. Supp.1995, 172— insofar as it delimits Fund's liability to claimant—is clear and unambiguous, the

---

18. According to the August 1999 PTD order Barnhill was born in April 1964 and he will be eligible for Fund PTD benefits from approximately February 2000 [expiration of the lapse-time period of 85 O.S. Supp.1995, § 172 (E)] until he reaches the age of sixty-five (65) years old; i.e. for about thirty (30) years, as he was thirty-five (35) years old when Fund benefits were to begin in February 2000. If he was granted PTD benefits from the date of the PTD order his total PTD benefits from Fund would obviously be increased by approximately six months of benefits.

19. In today's pronouncement it is unnecessary for us to definitively reach the meaning of the 1999 amendments to § 172. In the case of *Multiple Injury Trust Fund v. Pullum*, 2001 OK 115, 37 P.3d 899, note 7, *supra*, also decided today, we reject the assertion any change made to § 172 by 2000 Okla. Sess. Laws, Ch. 248, § 12, was intended by the Legislature to retrospectively increase Fund's liability for the ultimate amount of PTD benefits owed by it, where the last compensable injury occurred while 85 O.S. Supp.1995, § 172 (B) and (E) were effective and applicable.

1999 amendment of § 172 is not entitled to retroactive application to his situation as a clarifying enactment; nor is a conclusion of legislative intent to afford retrospective sweep otherwise discernable or warranted. The COCA erred when it ruled otherwise.[20]

¶ 18 The Court of Civil Appeals' opinion is **VACATED** and the Workers' Compensation Court's April 4, 2000 order is **SUSTAINED.**

¶ 19 HARGRAVE, C.J., HODGES, OPALA, SUMMERS and WINCHESTER, JJ., concur.

¶ 20 WATT, V.C.J., KAUGER and BOUDREAU, JJ., concur in result.

**20.** Our ruling in this cause is consistent with the generally applicable statutory rule in workers' compensation cases that: "[b]enefits for an injury shall be determined by the law in effect at the time of the injury...." 85 O.S. Supp.1997, 3.6 (F).