2013 OK CIV APP 28

**STATE of Oklahoma ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant,**

v.

**Lewis METCALF and Bonnie Metcalf, Defendants/Appellees.**

No. 109,436.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 13, 2013.

Barry K. Roberts, Norman, Oklahoma, for Plaintiff/Appellant.

Harlan Hentges, Harlan Hentges, PLLC, Edmond, Oklahoma, for Defendants/Appellees.

JANE P. WISEMAN, Judge.

¶1 Plaintiff State of Oklahoma *ex rel.* Department of Transportation (ODOT) appeals from an order of the trial court dismissing ODOT's petition to condemn a portion of property owned by Defendants Lewis and Bonnie Metcalf. Based on our review of the record and relevant law, we reverse the trial court's decision to dismiss and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On February 10, 2006, ODOT petitioned pursuant to "69 Okla. Stat.1991 § 1203" to condemn a tract of land in McClain County owned by the Metcalfs. Commissioners were appointed and instructed to determine the amount of just compensation to which Defendants were entitled. After inspecting the property and considering its value, the commissioners fixed compensation in the amount of $75,000 for the property taken according to their report filed with the court on May 23, 2006. The docket sheet reflects that Defendants filed an objection to the commissioners' report on June 12, 2006. On June 16, 2006, ODOT filed its demand for a jury trial.

¶3 On August 1, 2007, the trial court entered the following order:

> This matter comes on for Defendant's [*sic*] motion to strike Plaintiff's offer to confess. Parties discovered that Plaintiff's petition is incorrect and must be amended and reappoint commissioners. Thus, Defendant's [*sic*] motion to strike will be passed until after the commissioner's [*sic*] report.

The parties agreed that the petition as it stood did not properly describe the property taken and an amended petition should be filed. On September 7, 2007, ODOT filed its amended petition in which the original total taking of two acres was amended to a partial taking of .28 acres. ODOT stated in its amended petition that because the commissioners had the correct legal description when they filed their May 2006 report, a second appointment of commissioners was not necessary and the amount of money posted should remain the same. To support this

contention, ODOT attached affidavits of the commissioners who had originally determined the amount of just compensation as stated in their report. Defendants filed an objection to ODOT's motion to file an amended petition arguing, among other issues, that the commissioners needed to be reappointed as required by the trial "court's order and agreement of counsel."

¶ 4 Commissioners were subsequently reappointed to determine just compensation for the partial taking and were provided instructions. After inspecting the property and considering its value, the commissioners fixed just compensation for the .28 acres in the amount of $32,500. ODOT filed exceptions to this second report of commissioners to preserve its procedural right to have the appraisal reviewed.

¶ 5 Defendants also filed exceptions to the commissioners' report arguing "ODOT failed to negotiate in good faith with Defendants for purchase of the property to be condemned," and based on this failure, ODOT has failed to invoke "the power of eminent domain and has acted in excess of and violated its statutory authority." Defendants also filed a demand for jury trial.

¶ 6 After a hearing on the exceptions to the second commissioners' report on July 10, 2009, the trial court took the matter under advisement and ordered additional briefing. In addition to its briefing, ODOT filed a "motion to present supplemental evidence" claiming it was surprised by Defendants' motion to dismiss raised in their trial brief filed on the day of the hearing.

¶ 7 The trial court granted ODOT's motion to provide additional evidence and held a second hearing on December 15, 2009. At the end of the hearing, the trial court asked both sides to submit proposed findings of fact and conclusions of law. On April 8, 2011, the trial court issued its order sustaining Defendants' exceptions to the second commissioners' report and dismissing ODOT's petition for condemnation.

¶ 8 ODOT appeals.

## STANDARD OF REVIEW

¶ 9 ODOT raises the following issue: "Can a trial court dismiss a condemnation case upon a finding that the condemning authority failed to comply with the policies set out in 27 O.S.2011 § 13?" "A question of law concerning ascertainment of legislative intent faces us, which necessarily involves statutory interpretation." *Barnhill v. Multiple Injury Trust Fund*, 2001 OK 114, ¶ 8, 37 P.3d 890, 894. "Statutory interpretation, entailing a legal issue, demands a *de novo* review standard, i.e. a review in which an appellate court has plenary, independent and non-deferential authority to reexamine a trial court's legal rulings." *Id.* (footnote omitted).

## ANALYSIS

¶ 10 ODOT argues the trial court erred in dismissing this condemnation action. ODOT states the trial court's decision and Defendants' argument are summarized as follows:

> A good-faith negotiation and offer to purchase are a jurisdictional prerequisite to condemnation. The statute, 27 O.S.2011 § 13, requires an appraisal prior to negotiation and offer to purchase. The review appraisal conducted by ODOT did not rise to the standards of a proper appraisal. Therefore, they conclude, because there was no appraisal there was no bona fide offer and because there was no bona fide offer there was no power to condemn.

(Footnote omitted.)

¶ 11 ODOT contends that although this may be an "example of simple, linear reasoning, the premise is not an accurate expression of the law of eminent domain in Oklahoma." According to ODOT, the trial court and Defendants improperly "assigned a preclusive effect to the wording of 27 O.S.2011 § 13, and the court's conclusions of law are based almost entirely on that effect." ODOT also argues that two Oklahoma Supreme Court cases relied on by the trial court are either distinguishable or do not stand for the proposition that one must follow the statute to the letter or lose the right to condemn. These two cases are *Koch v. Oklahoma Turnpike Authority*, 1953 OK 148, 257 P.2d 790 and *Capps v. Whitegrass–Waterhole*

*Flood Control and Soil Conservancy District,* 1961 OK 26, 359 P.2d 318.

¶ 12 Title 27, Section 13 provides:

Any person, acquiring agency or other entity acquiring real property for any public project or program described in Section 9 of this title shall comply with the following policies:

1. Every reasonable effort shall be made to acquire, expeditiously, real property by negotiation.

2. Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head or governing body of the entity acquiring real property, if so mandated by federal law or regulation, may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value as such value is defined by federal law or regulation.

3. Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor and such amount shall be promptly offered for the property. In no event shall such amount be less than the approved appraisal of the fair market value of such real property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The owner of the real property to be acquired shall be provided with a written statement of, and summary of the basis for, the amount established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

4. No owner shall be required to surrender possession of real property before the agreed purchase price is paid or deposited with the state court, in accordance with applicable law, for the benefit of the owner of an amount not less than the approved appraisal of the fair market value of such property, or the amount of the award of compensation in the condemnation proceeding of such property.

5. The construction or development of a public improvement shall be so scheduled that, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from a dwelling, assuming a replacement dwelling, as required by the Oklahoma Relocation Assistance Act, will be available, or to move his business or farm operation without at least ninety (90) days' written notice from the date by which such move is required.

6. If any owner or tenant is permitted to occupy the real property acquired on a rental basis for a short term or for a period subject to termination on short notice, the amount of rent required shall not exceed the fair rental value of the property to a short-term occupier.

7. In no event shall the time of condemnation be advanced, on negotiations or condemnation and the deposit of funds in court for the use of the owner be deferred, or any other coercive action be taken to compel an agreement on the price to be paid for the property.

8. If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The acquiring authority shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.

9. If the acquisition of only part of the property would leave its owner with an uneconomic remnant, an offer to acquire that remnant shall be made. For the purposes of this section, an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the partial acquisition of the property of the owner which has little or no value or utility to the owner.

10. A person whose real property is being acquired in accordance with this title may, after the person has been fully informed of his right to receive just compensation for such property, donate such property, any part thereof, any interest therein, or any compensation paid therefor, as such person shall determine.

11. As used in this section:

a. "Appraisal" means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information; and

b. "Acquiring agency" means:

(1) a state agency which has the authority to acquire property by eminent domain pursuant to state law, and

(2) a state agency or person which does not have such authority, to the extent provided by regulation.

27 O.S.2011 § 13 (footnote omitted).

¶ 13 ODOT interprets the language of the statute, entitled "Policies," to mean the matters stated therein are simply "guidelines to implement a system which has as its ultimate purpose the determination of 'just compensation' to which property owners are entitled under the constitution." ODOT further asserts the trial court's reliance on this statute is prohibited by 27 O.S.2011 § 15 which provides: "The provisions of Section 5 [27 O.S. § 13] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." ODOT additionally cites and relies on *Western Farmers Electric Cooperative v. Willard,* 1986 OK CIV APP 5, 726 P.2d 361, and Oklahoma Attorney General Opinion No. 99–66, 1999 OK AG 66, which we discuss more fully below. Based on these considerations, ODOT concludes that the basis for the trial court's dismissal is erroneous and the dismissal must be reversed because "[t]he policies of § 13 are specifically not mandatory, and the offer to purchase has to be reasonable, as it was here, and is not conditioned on

strict compliance with those policies." (Footnote omitted.)

¶ 14 The trial court in its order held, "The procedure for negotiations set forth in 27 O.S. § 13 is mandatory and shall occur before commencement of a lawsuit to take real property by eminent domain" and that "ODOT was not entitled to invoke this Court's jurisdiction, because it did not negotiate in good faith." We agree with ODOT that the policies outlined in 27 O.S.2011 § 13 are not mandatory. Section 15 of Title 27 clearly states that Section 13's terms "create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." In the *Willard* case cited above, we previously affirmed the permissive nature of the language of Section 13. In *Willard,* the landowners alleged in their answer and counterclaim that Western Farmer Electric Cooperative (WFEC) failed to

> make a diligent effort in good faith to purchase the easement, that it did not comply with the requirements of 27 O.S. 1981 § 13, that it improperly entered the property for surveying purposes, that it was attempting to take more property than necessary, and that no written appraisal was furnished to them.

*Id.* at ¶ 5, 726 P.2d at 362 (declined to follow on other grounds by *Ward Petroleum Corp. v. Stewart,* 2003 OK 11, 64 P.3d 1113). The landowners incorporated these allegations into their exceptions to the commissioners' report. *Id.* at ¶ 7, 726 P.2d at 363. "Their objections were further predicated on the lack of the right of eminent domain of [WFEC], arguing compliance" with § 13, among other statutes, "is a condition precedent to that right." *Id.* This Court disagreed stating "that this statute is a statement of policy only" as set forth by 27 O.S. § 15. *Id.* at ¶ 12, 726 P.2d at 363. The Court in *Willard* concluded that although "a bona fide effort to purchase property sought to be condemned is a jurisdictional prerequisite to a condemnation action," Section 13 procedures are not conditions precedent to condemnation. *Id.* at ¶¶ 11–12, 726 P.2d at 363.[1]

---

1. The Court cited *Koch v. Oklahoma Turnpike Authority,* 1953 OK 148, 257 P.2d 790, for the

proposition that "a bona fide effort to purchase property sought to be condemned is a jurisdic-

The Court found Section 13 to be "a statement of policy only" as clearly set forth in Section 15. *Id.* at ¶ 12, 726 P.2d at 363. The trial court thus properly denied the "Landowners' objections based on [WFEC's] alleged failure to comply with Section 13." *Id.* at ¶ 13, 726 P.2d at 363; *see also* Oklahoma Attorney General Opinion No. 99–66, 1999 OK AG 66, ¶ 5 (finding that the language of 27 O.S. § 15 establishes that the terms of 27 O.S. § 13 "create no rights or liabilities, and, therefore, compliance with the policies found in Section 13 is not a condition precedent to a valid condemnation."); *see also State ex rel. Dep't of Transp. v. Evans,* 2010 OK CIV APP 107, ¶ 9, 241 P.3d 273, 276 (finding "a landowner has no private right of action" to "attempt to force the condemning authority to do, or refrain from doing anything, through the policies expressed in" 27 O.S. 2011 § 13. "There is no 'cause of action' and no remedy available through that statute."). Based on the above, the condemnor is required to make a bona fide offer to purchase the land before bringing its condemnation action. This is the only jurisdictional prerequisite. Although such offers may customarily be based on an appraisal, the statute does not require it.

 ¶ 15 Applying this conclusion regarding the nature of Section 13's policies, we must determine whether the trial court erred · in dismissing ODOT's action. According to the trial court's order, it relied on this statute and Oklahoma Administrative Code § 730:20–1–2 [2] in deciding to sustain Defendants' Exceptions to the Commissioners' Report. In its conclusions of law, the trial court found in part:

> 13. The procedure for negotiations set forth in 27 O.S. § 13 is mandatory and shall occur before commencement of a lawsuit to take real property by eminent domain.

> 14. ODOT did not follow the procedure set forth in 27 O.S. § 13 with regard to the .28 acres which ODOT seeks to condemn.

> . . . .

> 17. ODOT did not negotiate in good faith for the acquisition of .28 acres from the [Defendants] because:

> a. Good faith negotiations require [a] bona fide offer of just compensation for the property;

> b. Just compensation includes the value of the property taken plus damages to the remainder;

> c. ODOT did not make a good faith offer that included damages to the remainder;

> d. ODOT did not conduct an appraisal prior to commencing negotiations for the parcel as required by 27 O.S. § 13;

> e. Making an offer to [Defendants] without an appraisal violated 27 O.S. § 13;

> f. Making an offer to [Defendants] without an appraisal violates the written policies that ODOT has adopted in order to ensure compliance with the law;

> g. The effect of ODOT's violations of 27 O.S. § 13 and OAC 730:20–1–2 is to deprive ODOT and Defendants of the opportunity to avoid litigation through meaningful, good faith negotiations;

> h. By proceeding in violation of 27 O.S. § 13 and OAC 730:20–1–2 ODOT acted unreasonably, arbitrarily, capriciously, and otherwise contrary to the law.

> i. Offers made in violation of state statute, administrative rules, internal procedures do not constitute good faith negotiations,

> j. Negotiations which circumvent the policies and procedures established by 27 O.S. § 13 do not constitute good faith negotiations.

tional prerequisite to a condemnation action." *Western Farmers Elec. Coop. v. Willard,* 1986 OK CIV APP 5, ¶ 11, 726 P.2d 361, 363. We agree with ODOT that although the *Koch* and *Capps* cases relied on by the trial court both stand for this contention, they do not mention 27 O.S. § 13 or hold this statute to be mandatory.

2. The portion of the rule relied on by the trial court provides as follows: "All rights-of-way shall be acquired in accordance with applicable statutes. On any project where federal funds are involved in any part thereof, to the extent allowed by state law, all federal laws, rules and regulations shall be fully complied with in acquiring, clearing, and disposing of right-of-way." Okla. Admin. Code § 730:20–1–2.

Based on our interpretation of 27 O.S.2011 § 13 and Oklahoma Administrative Code § 730:20–1–2, we conclude the trial court erred in dismissing ODOT's action against Defendants. A review of the record and testimony shows ODOT presented a bona fide offer to purchase the land before it began condemnation proceedings. The record evidence on this issue is as follows:

¶ 16 Defendant Lewis Metcalf (Metcalf) testified he received an offer from ODOT of $130,650 for the entire tract of land.[3] ODOT's letter, introduced as an exhibit in the July 2009 hearing, indicated that this "offer is the amount [ODOT] arrived at after having [Defendants'] property appraised to find its fair market value and then considering damages, if any, which will result to the remaining land or to improvements." Metcalf testified ODOT explained to him it wanted to take the entire tract because he would not be allowed to locate the septic system on the remainder of his property. Metcalf expressly stated to ODOT he did not want them to take the entire tract of land but rather a partial tract.[4] Metcalf sent a letter to ODOT requesting only a partial take. In a letter dated January 25, 2006, ODOT presented Metcalf with a second offer of $11,000 based on a document entitled "Appraisal Review." This document set a value of $7,000 for ".28 acres@$25,000 per acre" and $4,000 to "Replace septic with Aerobic system."

¶ 17 Metcalf further testified that during the negotiation period, he explained to ODOT the resulting damages to his property from the partial taking. He testified he "told them that they're 12 feet from my front door, and being that close, damage my business and to the city ord[i]nances, I had a worthless building." He said they did not offer proximity damages, only the $11,000 offer. Metcalf requested damages to relocate the building to comply with the city ordinances.

¶ 18 Kurt Harms, Chief of ODOT's Right of Way and Utilities Division, testified that when he received Metcalf's letter seeking conversion to a partial take, he "went back to the review appraiser and asked [him] to reassess the offer that had been presented to [Metcalf]. The review appraiser did that and provided [them] with a new offer amount .... and that was presented to [Metcalf]." Harms testified that after presenting the second offer to Metcalf, "[t]he agent made several attempts after that to obtain a counter offer," but they were unable to do so in the time frame they had. "And so [they] never got a counter offer from [Metcalf] based on the partial take or the total take, for that matter. [They] had never received a counter offer from [Metcalf] for either one of those. Based on [their] project time frame, [they] needed to move forward, so the decision was made to condemn the property." Harms testified the second offer was not based on "a full appraisal" as they did before the first offer, but it "was sufficient for [their] needs" because it "assessed damages to the remainder ... assessed the value of the part taken ... [and] did what was needed to be done."

¶ 19 Mark Franklin, an independent appraiser who has done appraisal work for ODOT for about 17 years, performed the appraisal in this case. He testified he has seen the Defendants' property and is familiar with it. ODOT asked him to review the acquisition appraisal when the property was a total take and later asked him to reconsider his numbers based on a partial take. Although a separate appraisal was not performed on the partial take, ODOT asked him to revise his appraisal review from a total take to a partial take. He considered proximity damages in his review but found that none existed. In elaborating further, he stated that although the proximity of a highway could adversely affect residential property, the evidence showed no adverse impact

3. We note the "Summary Appraisal Report," also introduced during the July 2009 hearing, values the land at $130,600.

4. Tr., p. 18, Metcalf's testimony at the July 10, 2009, hearing:
 Q. Mr. Metcalf, did you want them to take the entire track [sic ]?
 A. No.

Q. Did you express that to ODOT?
A. Yes.
Q. What did they do in response to you expressing that you did not want the entire track [sic ] taken?
A. They had me to write them a letter explaining to them that I did not want the whole property taken.

on the commercial use of Defendants' building.

¶ 20 ODOT made a bona fide offer to purchase Defendants' land which satisfied the only jurisdictional prerequisite to this condemnation action. The trial court's dismissal must be reversed and this action remanded for further proceedings to determine damages, *i.e.,* just compensation to Defendants for the property taken and for injury, if any, to the remainder of the property not taken by ODOT.

## CONCLUSION

¶ 21 We conclude it was error to sustain Defendants' exceptions to the second commissioners' report on this basis and to dismiss ODOT's condemnation action against Defendants. The order dismissing the action is reversed, and the case is remanded for further proceedings.

¶ 22 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., and FISCHER, P.J. concur.