**OKLAHOMA POWER CO. et al. v. STATE INDUSTRIAL COM. et al.**

No. 22582. Opinion Filed March 1, 1932.

Rehearing Denied March 29, 1932.

122

V. E. McInnis, for petitioners.

White & White, for respondents.

ANDREWS, J. This is an original proceeding to review an award of the State Industrial Commission in favor of the claimant therein, the respondent herein, against the petitioner herein, the respondent therein. Hereinafter the parties will be referred to as petitioner and claimant.

We quote from the brief of the claimant as follows:

"Thereafter, on November 26, 1928, the claimant, Wade Berry, and the respondent, Oklahoma Power Company, filed before the State Industrial Commission their joint petition asking the Commission to continue its jurisdiction for the purpose of determining and approving the payment of $800, the same being approximately $3,000 less than claimant would be entitled to receive, to the said claimant, defendant in error here, as a final and complete settlement of claimant's claim. Testimony was taken on that joint petition and on November 27, 1928, the State Industrial Commission made the order thereon, which order is found at C.-M., page 141."

Pursuant to that order approving the final settlement on a joint petition under the provisions of section 7325, C. O. S. 1921, as amended by section 13, chapter 61, Session Laws 1923, the petitioner paid the claimant the amount of the award so agreed and ordered to be paid in the full, final, and complete settlement of the claim of the claimant against the petitioner, and a final receipt therefor was filed on November 28, 1928.

On December 11, 1930, the claimant appeared by his guardian and a new attorney and filed a motion to reopen the cause on the ground that the claimant had been adjudged a mental incompetent on April 9, 1929, and that both the joint petition and the order of the State Industrial Commission were void, because the claimant was mentally incompetent, because his signature was obtained by fraud and misrepresentation, and for other reasons. The award complained of herein was made on June 15, 1931. It was based on the theory that the claimant was mentally incompetent on November 27, 1928.

There are many contentions made herein. We consider it necessary to determine only one of them. The decision of this court in Tibbs-Dorsey Mfg. Co. v. State Industrial Commission, 147 Okla. 232, 296 P. 490, was overruled, by inference, by the decision of this court in Cameo-Blackstone Coal Co.

v. Purcell, 153 Okla. 21, 4 Pac. (2d) 753, and in terms, by the decision of this court in Indian Territory Illuminating Oil Co. v. Ray, 153 Okla. 168, 5 Pac. (2d) 383. Therein it was held that the State Industrial Commission lost jurisdiction with the making of an order approving a settlement under a joint petition. Under that rule the State Industrial Commission had no jurisdiction to make the award complained of in this case. To the same effect are the decisions of this court in Mabee v. Crowder, 148 Okla. 248, 299 P. 417; Magnolia Petroleum Co. v. Edgett, 151 Okla. 79, 1 P. (2d) 758, and Tippin v. State Industrial Commission, 134 Okla. 179, 272 P. 848. Under the provisions of section 7325, as amended, supra, the State Industrial Commission has jurisdiction to "consider the proposition of whether or not a final settlement may be had between the parties presenting such petition." The Commission is authorized and empowered to have a hearing thereon and to take testimony of physicians and others, not only as to the permanency or probable permanency of the injury, but as to other matters relevant to the subject-matter of such petition. The Commission has authority to dismiss the petition without a hearing, if, in its judgment, the petition should not be set for hearing. The Commission is authorized to approve such petition only when it decides that "it is for the best interest of both parties to said petition that a final award be made." An issue before the State Industrial Commission on such a petition is the competency of the parties, and, in our opinion, the approval of a joint petition by the State Industrial Commission is an adjudication of the competency of the parties to the extent that it may not at a later date find and determine that one of the parties was not mentally competent at the time. To hold otherwise would be to defeat the purpose of the Legislature in providing for the final settlement contemplated by section 7325, as amended, supra, of the act. We are not considering a case where a claimant has been adjudged to be mentally incompetent by a court of competent jurisdiction prior to the filing of a joint petition or the making of an award thereon. Such is not shown by the record in this case. If the settlement with an injured employee, which is obtained by fraud, is final in so far as the jurisdiction of the State Industrial Commission is concerned, it cannot be said that a settlement made with an injured employee mentally incom-

petent in fact, but not adjudicated a mental incompetent, is any the less final.

We do not consider it necessary to herein suggest the remedy, if any, of the claimant, if, in fact, he was mentally incompetent at the time of the filing of the joint petition and the making of the order approving the same.

The award of the State Industrial Commission complained of herein is vacated and the cause is remanded to the State Industrial Commission, with directions to dismiss the claim.

LESTER, C. J., and RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents. SWINDALL. and McNEILL, JJ., absent.

---

CLARK, V. C. J. (dissenting). The evidence in ;this case discloses that Wade Berry was injured on November 4, 1924, which resulted in a fractured skull. He was given medical attention for ·about eleven days and ordered by petitioners' doctor to go back to work. He tried to work for about two years and his head kept bothering him, and in December, 1926, he was operated on.

The testimony taken before the Industrial Commission on the 18th day of June, 1928, disclosed that the respondent's memory was bad, for the reason that he could not remember the date of the operation, which was a major operation on the skull of the respondent. The questions were asked:

"Q. Do you remember the month in which it was performed (speaking of the operation)? A. About the 26th. Q. Was it in November or December of last year, rather 1926? A. December I think of 1926. Q. December, 1926? A. Yes, but I am not positive. Q. What sort of an operation did you—did they perform, if you know? A. They just gave me shots in the arm and cut and cut around the injury and drilled in there. * * * Q. Did the doctor tell you what they did to you, the operation they performed? A. Yes, sir; they said they just cut the . skull out and I asked for a plate to be put in there, and they said they had quit using plates. * * * Q. Did you go back to work? A. I have never worked a day since then. Q. What is the reason? A. I haven't felt like it. If I work I have one of these bad spells if I get too warm. Q. Did you ever have any of these spells before the operation? A. No, sir; I never did feel right, but I never did have no epileptic spell. * * * Q. What was wrong with you? A. My head hurt all the' time. My left arm and left leg was weak. Q. Is that all? A. Well, I just felt 'goofy,' that was all. I didn't feel like myself. * * * Q. How many of those severe convulsions have you had? A. Six. Q. Over how long a period? A. They started about two months ago. Q. And you have had six during the last two months? A. Yes sir. * * * Q. What kind— do you have any idea what happens to you when you have a convulsion of that kind? A. I just fall. That is all I know. I just fall down. Q. You just fall? A. Yes, sir; and I don't know anything and I chew my tongue. Q. Do you have any idea what is happening to you during that time? A. No, no more than if I was dead. * * * Q. You had an operation to your head. Now, how long was it after that operation until you made a settlement? A. About two months. Q. Do you remember what you settled for? A. I don't know. I never got the check. I got the check, but I didn't get it for quite a while and then— Q. Do you know you settled for $1,500? A. I don't know anything about it when I — I don't know anything about it when I got it."

This testimony was taken at Oklahoma City, June 18, 1928; and this testimony of claimant was corroborated by his family physician.

Dr. Thos. J. Lynch filed with the Industrial Commission, May 6, 1927, a report dated November 2, 1926, in which it was stated in part as follows:

"On October 25th, we trephined his skull under local anaesthetic, and found a depressed fracture of the skull. The depression extending about ½ inch below the inner contour of the bone. In this piece of bone there was a well defined necrosis with a firm adhesion of the brain covering to the site of the fracture.

"It is impossible to say at this time what result we will ultimately obtain in this case. It is entirely possible that it will be necessary to cover the skull defect with a bone graft. Also, it is possible that this man has some infection in his brain or chrod, some distance from the site of the fracture. However, the condition that the man presents is directly due to the accident, and he is entitled to the usual care and attention. The amount of permanent disability cannot be determined at this time."

On the 2nd day of November, 1928, the Industrial Commission entered its order finding the amount of credits due petitioners, and the monies paid by petitioners herein, which order stated:

"That the amount of compensation to which claimant is, or will be, entitled by reason of his permanent partial disability be determined by the Commission at a later date."

On November 26, 1928, a purported joint petition was filed with the Commission, wherein a lump sum settlement was had and claimant was paid the sum of $800.

Testimony was taken at the hearing on this joint petition and a careful reading of all the testimony of respondent herein, Wade Berry, will disclose that he answered the leading questions asked by saying "Yes, sir;" and the only question asked him which required any mentality to answer was as follows:

"Q. You have been paid compensation in the amount of $2,165 since the injury? A. I guess so, yes."

On November 27, 1928, the Industrial Commission entered its order approving the purported joint petition, which was paid.

On December 11, 1930, Louise Berry filed her motion to reopen said cause, and to set aside the purported joint agreement and award made thereunder, in which she alleged that on April 9, 1929, Wade Berry was adjudged mentally incompetent by the county court of Okmulgee county, Okla., and that she was appointed his guardian. The principal allegation of her motion was that at the time said joint petition was signed by Wade Berry, he was wholly mentally incompetent, and could not enter into a binding or legal contract, and therefore the joint petition was invalid, and the order made thereon was likewise void. On this motion the cause was set down for hearing and testimony taken.

On June 15, 1931, the Industrial Commission made and entered its order and award and found that the order approving the joint petition was void and of no effect for the following reasons:

"That at the time said instrument, so entitled 'joint petition' was executed and filed, the claimant, Wade Berry, was mentally incompetent and wholly unable to understand and appreciate the nature of said agreement or its effect upon his rights, and therefore, without capacity to enter into or execute the same.

"Which said mental incompetency, want of understanding, and lack of capacity existed at the time of said attempted approval and at the time of the making of said order.

"That said Wade Berry, as the result of said injury aforesaid, was at the time of the execution and filing of said instrument, at the time of the attempted approval thereof, continuously ever since said injury, and now is totally and permanently disabled and incapacitated for the performance of manual labor.

"That, therefore, said instrument in writing so entitled, 'Joint Petition', was a fraud upon the said Wade Berry, did not fully reveal the facts to this Commission and this Commission was without jurisdiction or authority to approve the same, and therefore its attempted approval and said order of November 27, 1928, or each of them wholly void and of no effect. * * *

"That the order hereinbefore made on November 27, 1928, be and the same hereby is vacated, set aside, and held for naught. * * *"

The testimony taken on the last hearing by both expert and lay witnesses disclosed that the injury received by Wade Berry, which required an operation, resulted in respondent, Wade Berry, becoming totally incompetent.

Mrs. James Bell testified that she lived near respondent; that she was acquainted with respondent Wade Berry; that he would have epileptic fits; that for days after he had one of those fits, he would not know his near neighbors, and that he would speak to the witness, Mrs. Bell, and call her "mama," seemed to be talking to his mother. Mrs. Bell also testified that he had had one of these fits a short time before the joint petition was signed and settlement was had.

Dr. F. E. Sadler testified that he examined Wade Berry the latter part of November, 1928,

"Q. What was his mental condition as your examination disclosed at the time you made the examination? A. Well, my opinion has been for a good long time his mental condition is not much better than a ten-year old child's at any time."

He further testified that for several days after one of these fits, Wade Berry would be totally incompetent.

The record at page 184 discloses, question by Judge Doyle:

"Q. Doctor, do you think he has sufficient mentality to distinguish right from wrong? A. In his actions? Q. Yes? A. No, sir, I don't."

There was testimony in the record that epilepsy did not create mental incompetency. However, there is no testimony that the injury received by respondent would not create both mental incompetency and epilepsy.

The evidence supports the findings of the Industrial Commission that respondent was mentally incompetent at the time said "joint petition" was executed.

The majority opinion holds that a joint petition executed under section 7325, C. O. S. 1921, as amended by chapter 61, sec. 13, S. L. 1923, and an award entered thereon cannot be vacated by the Industrial Commission or avoided by the Industrial Commission on the grounds of fraud or misrepresentations or for want of jurisdiction.

Would this court hold that had this joint petition only been signed by the petitioners herein, it would be valid?

The court overlooks the law and the holdings of this court and other courts without exception—that a person mentally incompetent or incompetent by minority cannot execute a valid instrument. Therefore, the purported joint petition for a lump sum settlement had no more force and effect under the law than had the same been blank.

There was no joint petition for the reason Wade Berry, at the time, as shown by the testimony taken before the joint petition was executed, and subsequent thereto, was mentally incompetent to execute the same. Being mentally incompetent and made so by an accident received in a hazardous occupation with petitioners herein, he could not execute or enter into a valid agreement; therefore, the joint petition was null and void and of no force and effect, and insufficient to give the Industrial Commission jurisdiction to enter an award thereon.

This court, in Long v. Anderson, 77 Okla. 95, 186 P. 944, held: A person entirely without understanding has no power to make a contract of any kind.

In Norris v. Dagley, 64 Okla. 171, 166 P. 718, this court said, in the first paragraph of the syllabus:

"A person wholly without understanding has no power to make a contract of any kind."

The Supreme Court of Alabama, in Walker v. Winn, 110 Am. S. Rep. page 50, held:

"A contract of an insane person, whether resting in parol or by deed, is absolutely void, and the person contracting with such insane person can take no benefit under the contract."

The Supreme Court of the United States, in Dexter v. Hall, 15 Wall. 9, held:

"The power of attorney of a lunatic, or of one non compos mentis, is void"

—and at page 26 thereof, the court said:

"It has repeatedly been determined that a power of attorney made by an infant is void. So it has been decided in Ohio, in Kentucky, in Massachusetts, and in New York. In fact, we know no case of authority in which the letter of attorney of either an infant or a lunatic has been held merely voidable.

"It must, therefore, be concluded that the Circuit Court was not in error in instructing the jury that a power of attorney executed by an insane person, or one of unsound mind, is absolutely void."

A review of the authorities of the several states convinces the writer that the rule announced above is the universal rule in this and all English speaking countries of the world.

This court has held that a deed, mortgage, or contract in writing or parol, executed by a person insane or mentally incompetent, is absolutely void.

I am of the opinion that this joint petition being executed by a man who was mentally incompetent, who had been deprived of his mental faculties, whose reason had been dethroned by reason of the accident suffered in the employment of the petitioners herein, was absolutely void and of no force and effect, and was insufficient to give the Industrial Commission jurisdiction to enter the award approving the lump sum settlement, and that the order and award of the Industrial Commission vacating said award so made by the Industrial Commission without jurisdiction, or without a valid "joint petition" before it, is correct and should be affirmed by this court.