2017 OK 62

**MULTIPLE INJURY TRUST FUND, Appellant,**

v.

**Tommy GARRETT, Appellee.**

No. 112,961

Supreme Court of Oklahoma.

FILED 06/27/2017

Rehearing Denied: 12/4/2017

Brandy L. Shores, LATHAM WAGNER STEELE LEHMAN P.C., Tulsa, Oklahoma, for Appellant.

Sidney A. Musser, Jr., Oklahoma City, Oklahoma, for Appellee.

Colbert, J.

¶1 The dispositive issue presented on review is whether the claimant met the statutory definition of a "physically impaired person" at the time of the claimant's second on-the-job injury for purposes of determining eligibility for Multiple Injury Trust Fund (Fund) benefits. Subsumed in this determination is whether a duly-executed settlement agreement—memorialized on a form prescribed by the Workers' Compensation Court (WCC)—constitutes an adjudication of the claimant's disabilities. This Court answers both questions in the affirmative.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶2 On April 29, 1991, Tommy Garrett (Claimant) sustained a compensable on-the-job injury while working for the Oklahoma Department of Transportation (ODOT). Claimant stated that he was driving a road grader when a semi-truck, traveling approximately sixty-miles-per-hour, ran off the road and struck the left side of the grader.

¶3 Claimant was diagnosed with L5–S1 bilateral disc herniation with irritation of the S1 nerve root. Claimant was treated but ultimately required surgery to his back. The operative report described the surgery as a "[b]ilateral decompressive laminectomy and bilateral right and left sided laminectomy with discectomy L5–S1 interspace with bilateral decompression S1 nerve roots."[1]

¶4 Claimant subsequently filed a claim against ODOT in the WCC.[2] On August 13, 1992,[3] Claimant, ODOT and ODOT's insurance carrier settled Claimant's claim and memorialized that settlement in a WCC-prescribed form titled: Joint Petition. The Joint Petition disclosed injury to Claimant's "NECK, BACK AND ARM AND ALL

---

**1.** Duncan Regional Hospital Operative Report (May 21, 1991).

**2.** Court Claim No. 91-11090-H.

**3.** Id.

OTHER INJURIES BOTH KNOWN AND UNKNOWN." As a result of Claimant's injuries, "claimant was temporarily totally disabled from 4/29/91 to 7/7/92 ... for which claimant received $15,293.00, from the respondent or insurance carrier." The Joint Petition further stated that, "[c]laimant further alleges that in addition to said temporary total disability, claimant has sustained certain permanent disabilities which are compensable under the Workers' Compensation Act of the State of Oklahoma, which last allegation is by respondent or insurance carrier expressly denied." The Joint Petition also indicated Claimant's acceptance of a $100.00 settlement payment as "compensation for temporary disability, **permanent disability, permanent disfigurement,** ... and vocational rehabilitation or loss of wage earning capacity which claimant now has or may hereafter have as a result of said injury" against "**respondent and insurance carrier.**" (emphasis provided). That same day, the WCC, after reviewing the evidence, the stipulation of the parties, the files and record, approved the Joint Petition. Neither party appealed.

¶ 5 Over fifteen years later, on March 22, 2007, Claimant suffered another compensable on-the-job injury while working for Rodger Jeffcoats, Inc. (Employer). Claimant filed a claim against Employer in the WCC on May 15, 2008. As a result of this injury, the tribunal ordered Employer or its insurance carrier to pay Claimant fifty-two weeks of temporary total disability (TTD).[4] Claimant, Employer and Employer's insurance carrier entered into a Compromise Settle-

ment on May 24, 2012, another WCC-prescribed form.[5] That agreement awarded Claimant $125,000 for the permanent partial disability (PPD) and impairment ratings to the following body parts: 40% right knee, 40% left knee and 42% back. The WCC approved the parties' settlement that same day. Neither party appealed.

¶ 6 On October 31, 2012, Claimant filed a Form 3F seeking benefits from the Fund.[6] This form recited Claimant's impairment ratings from the latest on-the-job injury as 40% right leg, 40% left leg and 42% back.[7] Claimant also referenced the 1991 on-the-job injuries to his neck, back and arm.[8] The Fund denied liability and jurisdiction alleging that Claimant was not a "previously impaired person" as defined by Okla. Stat. tit. 85, § 171 (Supp. II 2005).[9] Specifically, Fund alleged that there was no disability or percentage therefrom adjudged and determined prior to Claimant's latest on-the-job injury.

¶ 7 The tribunal appointed an independent medical examiner (IME) to evaluate Claimant and "determine if claimant is permanently and totally disabled due to the combination of [Claimant's] injuries."[10] After the examination, the IME concluded that Claimant's 1991 prior claim

> was subrogated through third party insurance; however, he was awarded $15,293.00 for temporary disability for 62 weeks and ... $100.00 ... for permanent disability. [I]f it is determined by the Court that the injuries to his back are combinable and using the fact that he was temporarily totally disabled for 62 weeks, this would

---

4.  Agreed Order (April 20, 2010).

5.  Form CS-339-A: Compromise Settlement (May 24, 2012).

6.  Workers' Compensation Court File No. 2008-05732-K.

7.  Id.

8.  Id.

9.  The 2005 version of Okla. Stat. tit. 85, § 171 defines physically impaired person:

> For purposes of Sections 171 through 176 of this title, the term 'physically impaired person'

means a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of a member of his body, or the loss of the use or partial loss of the use of a member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or any previous adjudications of disability adjudged and determined by the Workers' Compensation Court or any disability resulting from separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time.

10.  Order for Medical Examination (March 18, 2013).

convert to approximately 12% impairment to the body as a whole.[11]

The IME also opined that Claimant's injuries were synergistic and assessed a "material increase of 10% over and above the numerical sum of these injuries, giving him a total of 116.5% impairment to the body as a whole." Combining those findings with Claimant's age, education and work experience, the IME found Claimant to be permanently totally disabled and "unable to return to the workforce."[12]

¶8 The tribunal found Claimant to be a "previously physically impaired person" at the time of Claimant's latest, compensable on-the-job injury and ordered Fund to pay Claimant $289.00 per week for fifteen years.[13] Fund appealed to the en banc panel of the tribunal. Upon reexamination, the panel found the tribunal's order contrary to law and against the clear weight of the evidence.[14] Based on its findings, the panel remanded the matter "for a redetermination of whether Claimant was a previously impaired person and the amount of disability and then for determination of whether claimant is permanently, totally disabled due to a combination of injuries."[15]

¶9 On remand, the tribunal again determined that both of Claimant's compensable on-the-job injuries resulted in permanent impairments. The tribunal adjudged Claimant permanently totally disabled as a result of those injuries and the "material increase resulting therefrom."[16] Although the tribunal stated that it "no longer [was] allowed to award [a] specific percent of disability," the tribunal applied Okla. Stat. tit. 85, § 329(J) and held that the IME opinion "shall be

followed unless there is clear and convincing evidence to the contrary." It found none. Fund appealed.

¶10 The Court of Civil Appeals reversed. Relying on Ball v. Multiple Injury Trust Fund, 2015 OK 64, 360 P.3d 499, COCA held that the tribunal's "finding of preexisting permanent disability where there was no such prior finding ... is in essence a Crumby[17] finding."[18] As such, Claimant failed to establish that he was a physically impaired person. Claimant appealed. This Court granted certiorari review.

¶11 On certiorari, Claimant urges that COCA's vacation of the tribunal's order awarding Claimant permanent total disability (PTD) benefits against Fund was error. Relying on the rationale in Multiple Injury Trust Fund v. Sugg, 2015 OK 78, 362 P.3d 222, Claimant urges that the 1992 Joint Petition constitutes an adjudication of Claimant's disabilities and renders Claimant a "physically impaired person" as contemplated by section 171 at the time of Claimant's 2007 on-the-job injuries. Fund, on the other hand, disagrees and avers that Ball is controlling.

¶12 At the outset, this Court distinguishes Ball v. Multiple Injury Trust Fund, 2015 OK 64, 360 P.3d 499 from the issues and facts presented here. In Ball, this Court held that assigning a Crumby finding of preexisting disability to an unrelated injury in the **absence of a prior adjudication**, simultaneously with an adjudication of a subsequent, compensable on-the-job injury to render a worker a "physically impaired person" was prohibited. (emphasis added). The crucial element missing in Ball was that the

11. Dr. Munneke Report (April 9, 2013).

12. Id.

13. Order Awarding Multiple Injury Trust Fund Permanent Total Disability Benefits (August 16, 2013).

14. Order on Appeal Vacating and Remanding the Decision of the Trial Court (November 19, 2013).

15. Id.

16. Order on Remand Awarding Multiple Injury Trust Fund Permanent Total Disability Benefits (June 2, 2014).

17. J.C. Penney Co. v. Crumby, 1978 OK 80, 584 P.2d 1325.

18. The term "Crumby finding" refers to a rated assessment by the Workers' Compensation Court of the quantum of pre-existing unrelated impairments suffered by a claimant at the time the work-related injury occurred. The Crumby finding has two components. The trial tribunal must rate (1) claimant's pre-existing unrelated impairments as well as (2) the impact, if any, the compensable injuries may have had upon claimant's preexisting disability. Hammons v. Okla. Fixture Co., 2003 OK 7, ¶5, n.11, 64 P.3d 1108, 1110 n.11.

worker lacked a prior adjudicated injury. Ball, 2015 OK 64 ¶¶ 1, 13, 360 P.3d at 504–05. For reasons discussed in Part III, infra, this Court finds Ball inapplicable.

## II. STANDARD OF REVIEW

■ ¶ 13 The overarching issue pressed on appeal is whether Claimant constituted a "physically impaired person" at the time of Claimant's subsequent work-related injury on March 22, 2007. Resolution of this issue hinges upon whether the 1992 Joint Petition constituted a prior adjudication of Claimant's disabilities as contemplated by section 171. Okla. Stat. tit. 85, § 171 (Supp. II 2005). Whether a worker was correctly adjudged a "physically impaired person" within the meaning of the Act is a jurisdictional question of law this Court reviews de novo. Special Indem. Fund v. Choate, 1993 OK 15 ¶ 12, 847 P.2d 796, 801.

## III. ANALYSIS

### A. Joint Petition

■ ¶ 14 This Court first determines that the 1992 Joint Petition is an adjudication of Claimant's injuries and resulting disabilities. The WCC is a creature of statute. Strong v. Laubach, 2004 OK 21, ¶ 10, 89 P.3d 1066, 1070. This statutory creation not only provided a scheme for compensation of injured workers' claims, but also a means for settling disputes, absent a full adversary hearing. See Okla. Stat. tit. 85, §§ 1–203(1981 & Supp. II 1990); See also In re Hyde, 2011 OK 31 ¶ 10, 255 P.3d 411, 414. The statutes and rules governing the parties' 1992 Joint Petition, here, are those in effect at the time of Claimant's first injury. Bertrand v. Laura Dester Ctr., 2013 OK 18 ¶ 14, 300 P.3d 1188, 1192. Claimant's first compensable injury was April 29, 1991. Accordingly, the 1981 version and 1990 supplement of Title 85, controls.

¶ 15 Rule 11 provides in pertinent part:

> The court shall prepare and adopt such forms for use in matters before the court as it may deem necessary or advisable. Whenever the court forms are prescribed and are applicable, they shall be used. ... The following forms have been adopted by the court:
>
> . . . .
>
> Compromise Settlement
>
> . . . .
>
> Joint Petition

Okla. Stat. tit. 85, ch. 4, Rule 11 (Supp. II 1991).

Section 1.2(E) provides in pertinent part:

> All rules and regulations, upon adoption, shall be submitted to the Supreme Court, which shall either approve or disapprove them within thirty (30) days. All rules and regulations, upon approval by the Supreme Court, shall be published and be made available to the public and, if not inconsistent with the law, shall be binding in the administration of the Workers' Compensation Act.

Okla. Stat. tit. 85, § 1.2(E) (1981).

And, Section 26 provides in pertinent part:

> If the employer and the injured employee shall reach a final agreement as to the facts with relation to an injury, and the resulting disability for which compensation is claimed under the Workers' Compensation Act, a memorandum of such agreement, in form as prescribed by the Administrator, signed by both the employer and employee, and approved by the Court shall be filed by the employer with the Administrator. In the absence of fraud this agreement shall be deemed binding upon the parties thereto. Such agreement shall be approved by the Court only when the terms conform to the provisions of the Workers' Compensation Act.

¶ 16 At the time of Claimant's and ODOT's agreement to settle, the WCC prescribed only two methods for resolving compensable claims subject to this Court's approval: Compromise Settlement and Joint Petition. See Okla. Stat. tit. 85, ch. 4, Rule 11 (Supp. II 1991); Okla. Stat. tit. 85, § 1.2(E) (1981). In accordance with the Act, Claimant and ODOT elected to settle by Joint Petition. That agreement was signed by the parties, identified Claimant's injuries, and awarded compensation for the resulting temporary and permanent disabilities. This Court notes that the Joint Petition indicates ODOT paid Claimant TTD benefits and a $100 PPD

award, acknowledging some degree of permanence to Claimant's work-related injuries.

¶ 17 On August 13, 1992, the WCC approved the Joint Petition after determining that the agreement conformed to the provisions of the Act. See § 26. Upon expiration of the time for appeal, the Joint Petition became a final adjudication of Claimant's injures. See also Okla. Power Co. v. State Indus. Comm'n, 1932 OK 171, ¶ 5, 156 Okla. 121, 9 P.2d 443, 444 (This Court held that the approval of a joint petition by the State Industrial Commission was a final adjudication and will not be subject to a collateral attack after the appeal time has expired.). No controlling distinction exists between adjudications memorialized by a final order and a judge-approved joint petition. Roberts v. Tway Constr. Co., 1974 OK 128, ¶ 18, 528 P.2d 1389, 1392. Simply put, an "adjudication" is any judicial action, See Depuy v. Hoeme, 1989 OK 42, ¶¶ 8–9, 775 P.2d 1339, 1342–43, including actions memorialized in a joint petition. Black, Sivalls & Bryson v. Bass, 1973 OK 9, ¶ 8, 506 P.2d 902, 904. Accordingly, this Court holds that the 1992 Joint Petition constitutes a "previous adjudication[ ] of disability adjudged and determined by the Workers' Compensation Court." Okla. Stat. tit. 85, § 171 (Supp. II 2005). The mere fact that the WCC-prescribed form failed to include the exact degree of impairment is irrelevant as to whether there was a final adjudication.

**B.  Physically Impaired Persons**

¶ 18 Fund advances a strained interpretation of section 171. Specifically, Fund challenges the 1992 adjudication of Claimant's disabilities as the Joint Petition lacks an impairment rating. Fund, however, is mistaken.

¶ 19 The Fund's liability for PTD benefits is statutorily limited to "physically impaired persons" at the time a claimant seeks benefits from the Fund. See Special Indem. Fund v. Carson, 1993 OK 64, ¶ 7, 852 P.2d 157, 158. At the time of Claimant's 2007 injuries and 3F claim, the statute in effect in pertinent part read:

For purposes of Sections 171 through 176 of this title, the term "physically impaired person" means a person who as a result of accident, disease, birth, military action, or any other cause, has suffered [the statute enumerates losses] . . . or **any previous adjudications of disability adjudged and determined by the Workers' Compensation Court** or any disability resulting from separately adjudicated injuries.

Okla. Stat. tit. 85, § 171 (Supp. II 2005) (emphasis added).

¶ 20 From a plain reading of the statute, section 171 merely requires Claimant, here, to have a prior adjudicated disability. Nothing in the text of Section 171, however, requires a quantifiable percentage of impairment to accompany the prior adjudicated disability as Fund alleges. In construing statutes, "[t]he general rule is that nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself . . . ." Huffman v. Oklahoma Coca–Cola Bottling Co., 1955 OK 76, ¶ 18, 281 P.2d 436, 440 (quoting 50 Am. Jur., Statutes, § 244). At the time of Claimant's subsequent compensable injury on March 22, 2007, Claimant had satisfied the statutory definition of a "physically impaired person" by virtue of the 1992 adjudication.

**C.  Permanent Total Disability Claims Against the Fund**

¶ 21 Before Claimant, here, can collect full compensation from the Multiple Injury Trust Fund, Claimant's disabilities must render Claimant permanently and totally disabled. Section 172(B)(3) prescribes the manner in which compensation benefits are to be determined where a "physically impaired person" has received a subsequent work-related injury on or after November 1, 2005. The pertinent portion applicable to this case provides:

if such combined disabilities constitute permanent total disability, as defined in Section 3 of this title, then the employee shall receive full compensation as provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the employee shall receive full compensation for permanent total disability if the combination of injuries renders

the employee permanently and totally disabled, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment. In permanent total disability cases the remainder of the compensation shall be paid out of the Multiple Injury Trust Fund and may be paid in periodic payments, as set forth in Section 22 of this title. The compensation rate for permanent total disability awards from the Multiple Injury Trust Fund shall be the compensation rate for permanent partial disability paid by the employer in the last combinable compensable injury. Permanent total disability awards from the Multiple Injury Trust Fund shall be payable for a period of fifteen (15) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. Permanent total disability awards from the Multiple Injury Trust Fund shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled.

Okla. Stat. tit. 85, § 172 (B)(3) (Supp. II 2005).

■ ¶ 22 As a practical matter, a <u>Crumby</u> finding of a claimant's preexisting disability is a necessary component in determining the claimant's present capacity for work. In fact, it is an indispensable factor in supplying the extent of a "claimant's prior (unrelated) disability and the compensable injury's impact . . . ." <u>Multiple Injury Trust Fund v. Sugg</u>, 2015 OK 78, ¶ 8, 362 P.3d 222, 226.

¶ 23 In affixing the liability of the Multiple Injury Trust Fund, this Court most recently noted that,

[u]nder § 172(B)(3), with regard to the Fund's liability for subsequent injuries oc-

curring after November 1, 2005, the dispositive issue is whether an employee is permanently and totally disabled. Notably, . . . the statute does not limit the Fund's liability to the disability resulting from the subsequent injury as if there had been no preexisting impairment. . . . [T]his Court has said that a Crumby finding is a rated assessment of the effect,. if any, upon the claimant's alleged capacity status from the interplay of his compensable harm with the unrelated pre-existing conditions. Effect refers to that component of the claimant's total disability from pre-existing impairments which may contribute to his current condition and which may have an effect on his present capacity for work. Additionally, a Crumby finding supplies the extent of a claimant's prior (unrelated) disability and the compensable injury's impact, if any, on the claimant's prior impairments. Thus, when the Claimant is being evaluated for permanent total disability, **a Crumby finding of preexisting disability is relevant in determining his or her present capacity for work.**

<u>Id.</u> (quotations omitted) (citations omitted) (emphasis added).

¶ 24 In effect, the statutory language implicitly requires a <u>Crumby</u> finding when the claimant by "accident, disease, birth, military action, or any other cause, has suffered" one of the losses enumerated in the statute or whose prior disabilities have been adjudged and determined by the WCC.[19] <u>Id.</u>; <u>See also</u> Okla. Stat. tit. 85, § 171 (Supp. II 2005). Upon meeting the statutory requirements of sections 171 and 172, the Court's sole prerogative then becomes whether the worker is permanently totally disabled.

¶ 25 The record, here, reveals that Claimant was engaged in gainful employment prior to Claimant's latest on-the-job injuries in 2007. But, thereafter, the synergistic effects

---

19. Section 171 includes "a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of a member of his body, or the loss of the use or partial loss of the use of a member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession" in the definition of a physically impaired person. A claimant that meets this definition is not required to have a prior adjudication of disability. In order to rate such a prior impairment, the trial court may make a <u>Crumby</u> finding simultaneously with the subsequent on-the-job injury and then rate the impact the compensable injury had on the preexisting impairment.

of Claimant's multiple, adjudicated work-related injuries required a material increase over and above the numerical sum of Claimant's preexisting injuries. The record also demonstrates that in combining Claimant's multiple work-related injuries with Claimant's age, education and work experience, Claimant was unable to return to the workforce. Claimant is permanently and totally disabled; and, therefore, entitled to an award of PTD benefits from the Fund.

## IV. CONCLUSION

¶ 26 As a matter of law, this Court holds that the 1992 Joint Petition constitutes a prior adjudication of Claimant's disabilities. Therefore, this Court concludes that Claimant qualifies as a "physically impaired person" as contemplated by Okla. Stat. tit. 85, § 171 (Supp. II 2005).

■ ¶ 27 Today, this Court reiterates its holding in Multiple Injury Trust Fund v. Sugg, 2015 OK 78, 362 P.3d 222, that "[o]nce an employee has established that he or she is a physically impaired person, ... for subsequent injuries occurring after November 1, 2005, the dispositive issue is whether the employee is permanently and totally disabled." Okla. Stat. tit. 85, § 172(B)(3) (Supp. II 2005). At this point, "[a] Crumby finding of preexisting disability may be combined with other impairments in determining whether the employee is permanently totally disabled and entitled to an award against the Fund." Multiple Injury Trust Fund v. Sugg, 2015 OK 78, ¶ 11, 362 P.3d 222, 226. Based on the foregoing, this Court concludes that Claimant is permanently and totally disabled; and, therefore, entitled to an award against the Fund.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; WORKERS' COMPENSATION COURT ORDER AFFIRMED.

1. ROA 131, Order on Remand at 1 (filed June 2, 2014) (emphasis added).

2. Garrett's 1992 Joint Petition states:
Claimant further alleges that in addition to said temporary total disability, claimant has sustained certain permanent disabilities which

Combs, C.J., Gurich, V.C.J., Watt, Edmondson, Colbert and Reif, JJ., concur

Winchester and Wyrick (by separate writing), JJ., dissent

Kauger, J., not voting

Wyrick, J., with whom Winchester, J., joins, dissenting:

¶ 1 The question presented by this case is not whether a workers' compensation judge's approval of a joint petition settlement can constitute an "adjudication" of certain facts. We long ago held that it could. The question is whether the judge's approval of *this* joint petition settlement was an "adjudication" of the specific fact relevant to the outcome of this case: whether Tommy Garrett was permanently disabled as a result of his 1991 on-the-job injury.

¶ 2 The trial court found that Garrett had "sustained two compensable job injuries in 1991 and 2007" and that "[b]oth were permanent impairments *and both were admitted* with benefits paid."[1] That conclusion, however, is not supported by the actual text of the 1992 joint petition settlement, which explicitly states that Garrett's employer disputed Garrett was permanently disabled as a result of his 1991 injury,[2] and contains no finding to the contrary from the approving judge. The Court of Civil Appeals was thus correct to reverse the trial court for its erroneous conclusion.

¶ 3 The majority, however, affirms the trial court by placing more weight on our precedents than they can bear, seemingly reading our cases as creating a rule whereby approval of a joint petition settlement constitutes a judicial determination in favor of the claimant of *all* fact questions, even those specifically left in dispute by the parties as part of their agreement. But this legal fiction is neither required by our precedents nor authorized by the governing statute, which requires

are compensable under the Workers' Compensation Act of the State of Oklahoma, which last allegation is by respondent or insurance carrier expressly denied.
ROA 79, Jt. Pet. (filed Aug. 13, 1992) [hereinafter 1992 Jt. Pet.].

an *actual* adjudication of permanent disability. For these reasons, I respectfully dissent.

I.

### A. Factual Background

¶ 4 In the spring of 2007, Tommy Garrett hurt his knee when he fell from a ladder while working as an air-conditioner repairman. About a year later, he hired an attorney and initiated a workers' compensation claim against his employer by filing a "Form 3" with the Workers' Compensation Court, indicating that he had suffered an injury to his left knee. That form asked Garrett whether he was "a previously impaired person due to a prior workers' compensation injury or obvious and apparent pre-existing disability," because if so he would need to submit a different form (a "Form 3F") and "may be entitled to benefits for combined disabilities."[3] Garrett answered "No," and he and his attorney signed the form under the penalty of perjury, affirming that "all statements made herein" were "true, correct and complete."[4]

¶ 5 Over the span of the next year and a half, Garrett's attorney filed two amended Form 3's, first to change the description of Garrett's injury to include a claim of injury to his right knee and back,[5] and then later to include a claim of injury to his back and right "leg" rather than just his knee.[6] On neither of the amended forms did Garrett amend his answer to the question asking if he was a previously impaired person.

¶ 6 The case proceeded for the next several years as a straightforward, single-injury claim, with Garrett never claiming that he had suffered any prior permanent impairment.[7] Finally, in May of 2012, Garrett and his employer entered into a compromise settlement, resolving all issues between the parties with respect to his 2007 injury.[8]

¶ 7 It wasn't until October, 2012, that Garrett filed a Form 3F, making the new claim that his 1991 injury *had* permanently impaired him and, that through a combination of that preexisting impairment and the 2007 injuries, he was now permanently, totally disabled and incapable of gainful employment. The Form 3F asked Garrett to list the percentage of permanent disability he had incurred and the settlement award he had received for that permanent disability in 1991, but Garrett provided no response.[9]

¶ 8 Because this claim against the Multiple Injury Trust Fund turned on whether he was a "physically impaired person" at the time of his 2007 injury, which in turn depended on whether he had "any previous adjudications of disability adjudged and determined by the Workers' Compensation Court,"[10] Garrett's ability to recover from the MITF hinged on his equating the 1992 joint petition with a "previous adjudication[ ] of disability." Garrett thus alleged—contrary to his prior statements—that the 1992 joint petition contained an award for permanent disabilities and that the court's approval of the award constitutes the requisite "adjudication" of prior permanent impairment.

¶ 9 In the 1992 joint petition settlement, Garrett and his employer agreed that Garrett had suffered "neck, back and arm" injuries that caused him to be "*temporarily* totally disabled" and for which he had received $15,293.00 in TTD benefits.[11] The settlement notes that Garrett "further alleges that in addition to said temporary total disability, [he] has sustained certain permanent disabilities which are compensable" and that this "*allegation is by respondent or insurance*

---

3. ROA 5, Form 3 (filed May 14, 2008).

4. *Id.*

5. ROA 17, Form 3 (filed Dec. 1, 2009).

6. ROA 20, Form 3 (filed Dec. 11, 2009).

7. In fact, Garret continued to deny that he ever received an award for permanent disability for his 1991 injury until months after his 2007 claims were resolved, including when he was examined by an expert physician in December of 2012 as part of the case against the MITF. ROA 81, Medical Report of Dr. L.Y. (Dec. 17, 2012).

8. ROA 42, Form CS-339-A (filed May 24, 2012).

9. ROA 43, Form 3F (signed Oct. 31, 2012).

10. 85 O.S.Supp.2005 § 171.

11. ROA 79, 1992 Jt. Pet. (emphasis added).

*carrier expressly denied.*"[12] The parties agreed to settle all of Garrett's claims for $100.00, which was a "full, final and complete settlement of all claims for statutory medical aid for rehabilitation procedures and for compensation, including compensation for temporary disability, permanent disability, permanent disfigurement, the benefits of physical and vocational rehabilitation or loss of wage earning capacity which claimant now has or may hereafter have as a result of said injury."[13]

¶ 10 The joint petition settlement includes an order from the Workers' Compensation Court approving the settlement,[14] which states that the court, "having reviewed the evidence, the files and records in said cause and being fully advised in the premises, finds that the above Joint Petition, incorporated herein and made a part hereof by reference, should be and is hereby approved."[15] The

order directs that the 3% Special Indemnity Fund Tax and a $20 attorney fee be paid out of the settlement proceeds. The order makes no findings with respect to Garrett's claim of permanent disability; it simply approves the joint petition as is, preserving the dispute as to Garrett's claim of permanent disability.

### B. *Procedural History*

¶ 11 After Garrett made his claim against the MITF, the Workers' Compensation Court appointed an independent medical examiner to evaluate Garrett. In that examiner's report, he discussed Garrett's 1991 injury and noted that Garrett was "awarded $15,293.00 for temporary disability for 62 weeks and he was given a bonus of $100.00."[16] "While this was not a truly adjudicated case," went on the examiner, "if it is determined by the Court that the injuries to his back are combinable ... this would con-

12. *Id.* (emphasis added). Compare this with Majority Op. ¶ 16 ("This Court notes that the Joint Petition indicates ODOT paid Claimant TTD benefits and a $100 PPD award, acknowledging some degree of permanence to Claimant's work-related injuries.").

13. ROA 79; 1992 Jt. Pet. The settlement amount suggests that little credence was given to Garrett's claim of permanent disability.

14. The Court's authority to approve a joint petition settlement was derived from 85 O.S.1991 § 84, which states:

The power and jurisdiction of the Court over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto if, in its opinion, it may be justified, including the right to require physical examinations as provided for in Section 25 of this title, and subject to the same penalties for refusal; provided, that upon petition filed by the employer or insurance carrier, and the injured employee, or other person entitled to compensation under the Workers' Compensation Act, 1 the Court shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Court is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject matter of such petition as the Court may require. The Court shall have authority to consider such petition and to dismiss the same without a hearing if in its judgment the same shall

not be set for a hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the Court decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly and the Court may make an award that shall be final as to the rights of all parties to said petition and thereafter the Court shall have no jurisdiction over any claim for the injury or any results arising from same.

Rule 28, meanwhile, required the Workers' Compensation Court to approve a joint petition settlement only after a record of the terms and conditions of the settlement was made and after the court satisfied itself that the claimant understood the effect of the settlement. Workers' Comp. Ct. R. 28(A), 85 O.S. 1991, ch. 4, app. In other words, the Workers' Compensation Court's approval of a joint petition settlement occurs to confirm that the settlement is fair and in the best interest of both parties. The rule also contemplates that a hearing take place and that evidence be submitted in support of every joint petition settlement before the court will approve it. *Id.* R. 28(B)-(E). Here, if a record of such proceedings exists, Garrett has failed to include it in the record on appeal.

15. ROA 79, 1992 Jt. Pet.

16. ROA 120, Medical Report of Dr. J.M. at 2 (Apr. 9, 2013). *But see id.* at 119–20, Medical Report of Dr. J.M. at 1–2 (describing the $100.00 "bonus" alternatively as "for permanent disability," while at the same time acknowledging that "this was not a truly adjudicated case").

vert to approximately 12% impairment to the body as a whole."[17] The examiner concluded that Garrett's 1991 and 2007 injuries were "synergistic" and that Garrett was now suffering from 116.5% impairment of his whole body, and was thus permanently, totally disabled.[18] Based upon this report, the Workers' Compensation Court found that Garrett was a "previously physically impaired person" at the time of his 2007 injury, that he was now permanently, totally disabled as a result of the combined effects of his 1991 and 2007 injuries, and that he was entitled to permanent-total-disability benefits from the MITF in the amount of $289 per week for the next fifteen years.[19]

¶ 12 The MITF appealed to a panel of the Workers' Compensation Court, arguing that the trial court's decision was improper because there was no prior adjudication of disability by the trial judge that would make the MITF liable for Garrett's award. The panel reversed the trial judge's decision, finding that it was "contrary to law AND against the clear weight of the evidence."[20] The three-judge panel thus remanded the case to the trial judge for a "redetermination of whether claimant was a previously impaired person and the amount of that disability and then for determination of whether claimant is permanently, totally disabled due to a combination of injuries."[21]

¶ 13 On remand, the trial judge held that Garrett had "sustained two compensable job injuries in 1991 and 2007" and that "[b]oth were permanent impairments *and both were admitted* with benefits paid."[22] The trial judge further held that "the combination of the two injuries make claimant permanently totally disabled" and reinstated the award of $289 per week for fifteen years.[23]

¶ 14 The MITF immediately appealed this decision, and we assigned the case to the Court of Civil Appeals. That Court reversed and remanded the decision, finding that the 1992 joint petition did not "adjudge and determine" that Garrett had suffered permanent disability, and thus the trial court's finding was essentially a *Crumby* finding such that Garrett was not a previously physically impaired person able to pursue recovery from the MITF.

¶ 15 Garrett petitioned this Court for certiorari, and we agreed to hear his case.

## II.

¶ 16 When the Legislature reinstated the Multiple Injury Trust Fund, it strictly limited the Fund's liability to instances where a claimant was a "physically impaired person" at the time they suffered their latest on-the-job injury and is now permanently, totally disabled as a result of the latest injury.[24] To be a "physically impaired person," the claimant must meet one of two criteria, only one of which is relevant here: that the claimant has a "previous adjudication of disability adjudged and determined by the Workers' Compensation Court."[25] We have held before that being a "physically impaired person" is in fact a jurisdictional element, meaning that no court can enter a judgment against the MITF unless this statutory prerequisite is met.[26] The command from the Legislature is therefore abundantly clear: the Workers' Compensation Court has no jurisdiction to enter an award against the MITF unless the Workers' Compensation Court has previously "adjudged and determined" that the claimant

**17.** *Id.*

**18.** *Id.* at 121, Medical Report of Dr. J.M. at 3.

**19.** ROA 72–73, Order Awarding MITF PTD Benefits at 1–2 (filed Aug. 16, 2013).

**20.** ROA 129, Order on Appeal at 1 (filed Nov. 19, 2013).

**21.** *Id.*

**22.** ROA 131, Order on Remand at 1 (emphasis added).

**23.** *Id.* at 132, Order on Remand at 2.

**24.** 85 O.S.Supp.2005 §§ 171, 172(B)(3).

**25.** 85 O.S.Supp.2005 § 171. The other criterion is whether the claimant has the sort of open and obvious disability that would be apparent to a lay person. Garrett claims no such disability.

**26.** *Ball v. MITF*, 2015 OK 64, ¶ 8, 360 P.3d 499, 503.

has a permanent disability.[27]

¶17 The inquiry as to whether this statutory prerequisite has been satisfied must therefore begin with an examination of what the Legislature meant when it said "previous adjudication of disability adjudged and determined by the Workers' Compensation Court." Those terms are not statutorily defined, so I begin with the plain meaning of those words, as a legislator casting a vote in favor of the statutory language would have understood them. The plain meaning of "adjudicate" is "to hear or try and determine, as a court; to settle by judicial decree; to adjudge[.]"[28] To "adjudge," meanwhile, is "to determine in the exercise of judicial power; to decide or determine judicially,"[29] while to "determine" is to "settle a question or controversy about; to decide by authoritative or judicial sentence."[30]

¶18 Given the meaning of these statutory terms, the Workers' Compensation Court's approval of the 1992 joint petition settlement cannot be fairly read as having "adjudged and determined" that Garrett had suffered a permanent disability. The joint petition explicitly states that it leaves unresolved the question of whether Garrett had suffered a permanent impairment, and the court order approving the settlement is silent on the matter. Thus, as a matter of *fact*, the Workers' Compensation Court adjudged and determined nothing with respect to whether Garrett had been permanently impaired.[31] Given that no *actual* adjudication of permanent impairment occurred, § 171 renders the Workers' Compensation Court without jurisdiction to enter an award against the MITF. In my view, this should be the end of the matter.

¶19 I recognize, however, that we do not come to this issue with a blank slate. But even putting aside the plain meaning of the statute, while we have previously held that a judge's approval of a joint petition settlement sometimes includes an adjudication and determination of the existence of underlying facts,[32] today's decision goes much further, creating a legal fiction whereby all allegations made by a claimant are deemed "adjudged and determined" in his favor even when the order approving the joint petition plainly makes no such adjudication. None of our prior decisions mandate this result.

¶20 First, the cases relied on by the majority fall short of establishing any per se rule that an approved joint petition constitutes an adjudication of disability. The majority cites *Oklahoma Power Co. v. State Industrial Commission*[33] as holding "that the approval of a joint petition by the State Industrial Commission was a final adjudication and will not be subject to collateral attack after the appeal time has expired."[34] That's true; *Oklahoma Power Co.* does explain that judicial approval of a joint petition is imbued with the same finality as other judgments, but that case does not say that approval of a joint petition is *ipso facto* an adjudication of disability. Indeed, at most, that case states that judicial approval of a joint petition settlement—like other settlement agreements—

---

27. 85 O.S.Supp.2005 § 171; *see also id.* § 172(A)(1) (defining an entitled employee under § 172 as "an employee, *who is a 'physically impaired person'...*" (emphasis added)).

28. WEBSTER'S NEW INTERNATIONAL DICTIONARY 33 (2d ed. 1959).

29. *Id.*

30. *Id.* at 711. Even if we put aside the ordinary meaning of those words and look to their meaning in the legal sense, "adjudge" and "adjudicate" in lawyer parlance means essentially the same thing: "[t]o deem or pronounce to be" and "[t]o rule upon judicially." BLACK'S LAW DICTIONARY 42 (7th ed. 1999). "Determine" has no specialized legal meaning.

31. Garrett argues in his brief-in-chief that the MITF merely challenges the joint petition as defi-

cient because it does "not assign a percentage of impairment" or a "monetary value" to his permanent disability. Resp't's Br. at 5. That is not correct. The MITF argues that there was no adjudication of disability *at all*, notwithstanding any adjudication of those more specific facts. Pet'r's Br. at 5–7.

32. *See, e.g., Special Indem. Fund v. Simpson,* 1960 OK 24, 349 P.2d 635, *abrogated in part by Special Indem. Fund v. Tyler,* 1961 OK 304, 369 P.2d 180 (Okla. 1961), *as recognized in Special Indem. Fund v. Henderson,* 1964 OK 177, ¶7, 394 P.2d 466, 468.

33. 1932 OK 171, 156 Okla. 121, 9 P.2d 443.

34. Majority Op. ¶17.

is an adjudication that the parties were competent to enter into such an agreement and, thus, that the agreement may not be challenged later on the basis of incapacity.[35]

¶ 21 And while *Roberts v. Tway Construction Co*[36] does say that the Court could "perceive no controlling distinction" between a final order and a judge-approved joint petition,[37] read in context, *Roberts* merely held that:

> We perceive no controlling distinction between a final order *which awarded compensation for a single injury without any finding respecting other injuries*, and a joint petition settlement approved by a trial judge after consideration of medical evidence *concerning only one of multiple injuries resulting from the same accident*.[38]

The issue in *Roberts* was whether a joint petition settled all injuries arising from the same accident or merely the injuries described in the petition.[39] The *Roberts* Court—relying on the plain text of the joint petition—concluded that the settlement only covered the injury listed on the petition form.[40] In support, the Court cited *Oil Capitol Sheet Metal Works v. Robinson*,[41] where the Court held that awards by final order also only adjudicate the injury in front of them and not all injuries arising from the same accident, hence the language regarding a lack of "con-

trolling distinction."[42] Like *Oklahoma Power Co.* above, this case does not hold that an approved joint petition is indistinguishable from a disability award authorized by final order. Instead, and again like *Oklahoma Power Co.*, *Roberts* stands for the proposition that a judge-approved joint petition is only an adjudication of the issues determined in the petition, which *Roberts* demonstrates are determined by the text of the petition itself.

¶ 22 Likewise, this Court in *Depuy v. Hoeme*[43] did not attempt to define "adjudication," much less to define it as "any judicial action" or, more importantly, as any determination related to disability.[44] And while *Black, Sivalls & Bryson v. Bass*,[45] (like *Oklahoma Power Co.* and *Roberts* above) held that an approved joint petition constitutes a judicial determination, it also held (again like *Oklahoma Power Co.* and *Roberts*) that such a determination is limited to only the facts upon which the petition settlement was based.[46]

¶ 23 Contrary to the majority's reading, none of these cases purport to make a joint petition identical to a final order procured following a fully litigated dispute. While both can finally resolve a claim and while both can constitute a judicial determination of facts, only one is an adjudication of every issue in a workers' compensation case: the final order.

---

**35.** *Okla. Power Co.*, 1932 OK 171, ¶ 5, 156 Okla. 121, 9 P.2d at 444 ("The commission is authorized to approve such petition only when it decides that it is for the best interest of both parties to said petition that a final award be made. An issue before the State Industrial Commission on such a petition is the competency of the parties, and, in our opinion, the approval of a joint petition by the State Industrial Commission is an adjudication of the competency of the parties to the extent that it may not at a later date find and determine that one of the parties was not mentally competent at the time." (internal marks omitted)); *see* 15A C.J.S. *Compromise & Settlement* § 45 (June, 2017) ("A valid compromise agreement is final and conclusive between the parties as to the matters included, and ordinarily, the agreement is not subject to collateral attack."); *see also id.* § 37 ("The compromise and settlement of a claim or cause of action is not an admission of liability but merely admits that there is a dispute and that an amount is paid to be rid of the controversy.").

**36.** 1974 OK 128, 528 P.2d 1389.

**37.** *See* Majority Op. ¶ 17.

**38.** *Roberts*, 1974 OK 128, ¶ 18, 528 P.2d at 1392 (emphasis added).

**39.** *Id.* ¶ 15, 528 P.2d at 1391–92.

**40.** *Id.* ¶¶ 16–17, 528 P.2d at 1392.

**41.** 1968 OK 159, 447 P.2d 438, *superseded by* Workers' Comp. Ct. R. 19, 85 O.S.Supp. 1979, ch. 4, app., *as recognized in Frair v. Sirloin Stockade, Inc.*, 1981 OK 117, ¶ 6, 635 P.2d 597, 599.

**42.** *Roberts*, 1974 OK 128, ¶ 18, 528 P.2d at 1392.

**43.** 1989 OK 42, 775 P.2d 1339.

**44.** *Contra* Majority Op. ¶ 17.

**45.** 1973 OK 9, 506 P.2d 902.

**46.** *Id.* ¶¶ 8–9, 506 P.2d at 904.

The most these cases indicate is that an approved joint petition *could* constitute an "adjudication of disability" *if* permanent disability is a fact established or a fact that forms the basis of the petition settlement.

¶ 24 Indeed, that is exactly the rule this Court has announced in other cases addressing this issue. In a series of cases in the 1960's, this Court determined that:

> [W]here there is a prior settlement on joint petition which discloses that claimant had substantial permanent disability to the body as a whole the disability has been adjudged and determined within the meaning of Section 171 . . . .[47]

Each of those cases included evidence beyond the text of the joint petition that "disclosed" the existence of permanent disability. The most analogous of those cases is *Special Indemnity Fund v. Simpson.*[48]

¶ 25 In *Simpson,* the claimant had two work-related injuries, one in 1958 the other in 1948,[49] both of which were settled by joint petition. There, as here, the Fund challenged claimant's qualifications as a "physically impaired person," arguing that his prior joint petition settlement was insufficient to constitute an adjudication of disability. This Court, in accepting the joint petition as an adjudication of disability, noted that claimant included in the record a doctor's report from the earlier joint petition proceeding "show[ing] a permanent partial disability of 35 percent to

the body as a whole" as a result of the 1948 injury.[50] In fact, a review of that record shows that there were multiple doctors' reports included dating back to the earlier injury, each of which indicated that the claimant was permanently disabled. Therefore, the evidence in that case disclosed the existence of permanent disability such that the court had a factual basis upon which to consider the approval of that settlement as an adjudication of disability, despite the settlement's language leaving the claim of disability in dispute.[51] The actual existence of permanent disability was even more apparent when considering that the claimant in *Simpson* received almost $5,000 to settle his claims.[52]

¶ 26 This case lacks any such evidence. Garrett has included no doctor's reports, no transcripts, nothing to establish that he was actually permanently disabled as a result of his first injury. Indeed, the evidence in this record all seems to point to the contrary. First, Garrett and his employer settled his claims in 1992 for essentially nuisance value, demonstrating that the parties placed little value on his claim of permanent disability. Then there are Garrett's statements and attestations throughout the subsequent-injury proceeding disclaiming the existence of any preexisting disability. And finally, there is the 1992 joint petition itself, which again contains language that expressly contests the

---

**47.** *Simpson,* 1960 OK 24, ¶ 9, 349 P.2d at 637; accord *Bonny v. Special Indem. Fund,* 1964 OK 240, ¶¶ 8–10, 397 P.2d 152, 154–55; *Special Indem. Fund v. McCoy,* 1960 OK 96, ¶ 5, 351 P.2d 725, 727.

**48.** 1960 OK 24, 349 P.2d 635.

**49.** There is some inconsistency in the Court's opinion in *Simpson* as to the date of the prior injury. Initially the Court quotes the record in saying the injury was in July of 1948, but later indicates that the injury was in July of 1950. Compare *id.* ¶ 2, 349 P.2d at 636, with *id.* ¶ 4, 349 P.2d at 636. Upon independent review of the record in that case, it is clear that *Simpson's* previous injury occurred in 1948, and that is the injury the court refers to when discussing the December 1950 joint petition.

**50.** *Id.* ¶ 4, 349 P.2d at 636.

**51.** That language in the 1950 joint petition form reads:

> Claimant further alleges that in addition to said temporary total disability he has sustained certain permanent disabilities which are compensable under the Workman's Compensation Act of the State of Oklahoma, respondent and insurance carrier expressly denying said allegations, and denying that the claimant has sustained any permanent disability as a result of said accidental personal injury.

R. at 133, Jt. Pet. (filed Dec. 27, 1950), *Simpson,* 1960 OK 24, 349 P.2d 635.

**52.** To be clear, I read § 171 as requiring an *actual* adjudication, which in my view requires the Workers' Compensation Court to *actually* make a finding of permanent disability when it approves a settlement if a claimant wants to later use that settlement as a basis for qualifying as a "physically impaired person." Thus, even though *Simpson* presents a much closer case than this one, it too may have been wrongly decided.

existence of any such disability. This record does not come close to demonstrating that the 1992 joint petition settled an established claim of permanent disability. Rather, it demonstrates that no one—not even Garrett—thought the Workers' Compensation Court had "adjudged and determined" that he was permanently disabled as a result of his 1991 injury until the potential for recovery from the MITF became apparent. This cannot be what the Legislature had in mind when it agreed to make the MITF liable to claimants "suffer[ing]" from "previous adjudications of disability adjudged and determined by the Workers' Compensation Court."[53]

### III.

¶ 27 Because the 1992 joint petition did not constitute a "prior adjudication of disability," the next question is whether the 1991 injury can form the basis of a contemporaneous adjudication of preexisting disability—a.k.a. a *Crumby* [54] finding—and whether that *Crumby* finding can nonetheless qualify Garrett as a "physically impaired person." Our opinion in *Ball v. Multiple Injury Trust Fund* says that it cannot.[55]

¶ 28 In *Ball* we held that under the 2005 version of 85 O.S. § 171, "[a] *Crumby* finding of preexisting disability made simultaneously with an adjudication of an on-the-job injury may not be combined with that adjudicated injury to render the Claimant a physically impaired person."[56] We have previously held that the law in effect at the time of the claimant's subsequent injury is the law that governs the claim against the MITF.[57] When Garrett suffered his subsequent injury in 2007, the most recent version of 85 O.S. § 171 was the 2005 version-the very same law at issue in *Ball*. Therefore, the 2005 version of § 171 and *Ball*'s interpretation of it govern Garrett's claim against the MITF such that the Workers' Compensation Court

could not divine a preexisting disability from the 1991 injury in order to qualify Garrett as a "physically impaired person." *Ball* makes clear that any such adjudication of permanent disability had to exist before the claim arising from the most recent injury.[58] The fact that the 1992 joint petition left permanent disability explicitly contested again forecloses its use in establishing jurisdiction over the MITF.

\* \* \*

¶ 29 For these reasons, I respectfully dissent.

---

53. 85 O.S.Supp.2005 § 171.

54. *See generally J.C. Penney Co. v. Crumby*, 1978 OK 80, 584 P.2d 1325; *see also Ball*, 2015 OK 64, ¶ 1, 360 P.3d at 500–01 (defining a *Crumby* finding as "rated assessments by the Workers' Compensation Court of the amount of preexisting unrelated impairments suffered by a claimant at the time the on-the-job injury occurred").

55. 2015 OK 64, 360 P.3d 499.

56. *Id.* ¶ 17, 360 P.3d at 507.

57. *MITF v. Wade*, 2008 OK 15, ¶ 14 n.3, 180 P.3d 1205, 1209 n.3; *MITF v. Pullum*, 2001 OK 115, ¶ 9, 37 P.3d 899, 904; *Barnhill v. MITF*, 2001 OK 114, ¶ 9, 37 P.3d 890, 894.

58. 2015 OK 64, ¶ 17, 360 P.3d at 507.